IN THE COURT OF APPEALS OF TENNESSEE

| | |
|---|---|
| STATE OF TENNESSEE DEPARTMENT OF HUMAN SERVICES, | ) C/A NO. 03A01-9604-JV-00150 |
| | ) BRADLEY COUNTY JUVENILE COURT |
| Petitioner-Appellee, | ) |
| and | ) |
| WILLIAM D. GARDNER and JOANN GARDNER, | ) |
| Intervening Petitioners-Appellees, | ) |
| v. | ) |
| DANA D. DEFRIECE, | ) |
| Respondent-Appellant. | ) |
| IN THE MATTER OF: | ) |
| JOHN DEFRIECE, a minor. | ) HONORABLE C. VAN DEACON, JR., ) JUDGE |

FILED

**October 4, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

For Appellant

DEBRA L. HOUSE
Southeast Tennessee Legal
  Services
Cleveland, Tennessee

For Appellees Gardners[1]

RANDY G. ROGERS
Athens, Tennessee

O P I N I O N

VACATED AND REMANDED                                    Susano, J.

---

[1]The Department of Human Services elected not to file a brief in this matter, pointing out that the child at issue is no longer in its physical or legal custody.

The trial court terminated the parental rights of Dana D. Defriece (Mother) to her son, John Defriece (John) (DOB: January 9, 1988).[2]  Mother appeals, raising three issues that present the following questions:

>  1.  Is the proper appeal route in this case directly to the Court of Appeals or rather to circuit court for a *de novo* hearing?
>
>  2.  Do the allegations of the intervening petition satisfy the requirements of T.C.A. § 37-1-147(a) (1991)?
>
>  3.  Is the trial court's termination of Mother's parental rights supported by clear and convincing evidence?

## I

The trial court initially placed Mother's four minor children, including John[3], in the protective custody of the Department of Human Services (DHS).  The foster care plan in the record indicates that the reasons for the placement were Mother's abuse of alcohol and drugs; her failure to provide a stable home for the children; and her movement with the children into and out of a boy friend's residence all within one week.  The plan also notes that DHS had made "all reasonable efforts to prevent

---

[2]The trial court also terminated the parental rights of the child's natural father, Jack J. Defriece.  That judgment was not appealed.

[3]In addition to John, Mother has three other minor children:  Katie (DOB: August 18, 1986); Tiffany (DOB: July 6, 1989); and Amber (DOB: August 3, 1991).  At present, Mother has custody of Katie.  Mother surrendered her parental rights to Amber, while Tiffany remains in the custody of the Department of Human Services.  Since this appeal concerns John, we address only those issues bearing on the termination of Mother's parental rights as to that child.

this removal," that Mother had been offered counseling and day care, and that she had moved out of housing provided by a local church. After a hearing on DHS's petition, the trial court found the children dependent and neglected and awarded their custody to DHS. The court ordered that Mother seek job training, placement through Vocational Rehabilitation, obtain her GED, and fully comply with the foster care plan.

John has resided primarily with the intervening petitioners, William and JoAnn Gardner (Gardners), since he was ten months old. After the children were placed in the temporary custody of DHS, the Gardners filed their intervening petition (Petition) asking the court to grant them custody of John and his sister, Katie, and seeking the termination of the parents' rights with respect to those children. In response to the Petition, the Guardian ad Litem expressed the opinion that it was in the children's best interest to remain with the Gardners.

The trial court held three separate hearings on the Petition. Following the first hearing, the court awarded full legal custody of John and Katie to the Gardners, finding that Mother had "failed to show any substantial improvement in her circumstances," and that the Gardners were fit persons to have the children's custody. The court continued the matter until a later date, and provided that its order would become final if Mother did not make significant progress. After the second hearing, the court ordered that John and Katie remain in the

3

custody of the Gardners, and set the matter for further review at a later time. Following the third hearing, the trial court found

> that the subject child, John Defriece, has been in the custody of the Tennessee Department of Human Services in excess of one year; that the conditions which led to said child's removal still persist, that there is little likelihood that said conditions will be remedied at an early date so that the child can be returned to either parent in the near future, that the continuation of the legal parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home; that the lack of stability of the natural mother ... has been monumental; that the natural mother continues to lack the ability to provide for the subject children ....

The court thus found that it was in John's best interest for Mother's parental rights to be terminated and for John to be placed in the full custody of the Gardners. The court subsequently entered an order to that effect.

## II

Our review is *de novo* upon the record with a presumption of correctness as to the trial court's findings, unless the preponderance of the evidence is otherwise. Rule 13(d), T.R.A.P.; *Tennessee Dept. of Human Services v. Riley*, 689 S.W.2d 164, 170 (Tenn. App. 1984).

The criteria upon which the trial court terminated Mother's parental rights are set forth in T.C.A. § 37-1-147(d)(1) (1991):

> After hearing evidence on a termination petition, the court may terminate parental rights if it finds on the basis of clear and convincing evidence that termination is in the child's best interest and that one (1) or more of the following conditions exist:
>
> (1) The child has been removed from the custody of the parent by the court for at least one (1) year and the court finds that:
>
>   (A) The conditions which led to the removal or
>   other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of the parent(s) still persists;
>
>   (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to the parent in the near future; and
>
>   (C) The continuation of the legal parent and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home[.]

Prior to April 15, 1994, T.C.A. § 37-1-159(a) (1991) provided that a party appealing a juvenile court's decision in a termination of parental rights case was entitled to a trial *de novo* in circuit court; however, this procedure was changed by the enactment of Chapter 810 of the Public Acts of 1994, effective April 15, 1994. The amended version of T.C.A. § 37-1-159 (Supp. 1995) eliminated the *de novo* trial in circuit court and provided

5

instead for an appeal as of right directly to this court. T.C.A. § 37-1-159(a) and (g) (Supp. 1995); *In re S.M., Jr.*, C/A No. 01A01-9506-JV-00233, 1996 WL 140410 (Tenn. App., M.S., filed March 29, 1996, Koch, J.).

## III

We turn first to Mother's contention that she is entitled to a trial *de novo* in circuit court due to the fact that the amendment to T.C.A. § 37-1-159 (1991) became effective after the commencement of these proceedings. The Gardners' Petition was filed on February 11, 1993. The first hearing on the matter was started on August 24, 1993, and completed on September 29, 1993. The amended version of T.C.A. § 37-1-159 (Supp. 1995) became effective on April 15, 1994. The second hearing was held five days later, on April 20, 1994. The third hearing, after which Mother's parental rights were terminated, was held on August 25 and 26, 1994. As can be seen, the change in appellate procedure took effect in the middle of this litigation.

Mother argues that application of the amended statute to this appeal causes her unfair prejudice. She argues in her brief that she had the right to expect a trial *de novo* in circuit court and that, because of this expectation, she did not take steps to preserve the record for appeal by employing a court reporter to transcribe the evidence presented in the Bradley County Juvenile Court. Mother argues that the second and third

6

hearings were simply continuations of the first hearing, which was held prior to the amendment's effective date. She asserts that she was denied "another opportunity to fully present her case" in circuit court, and that this case should therefore be remanded to circuit court for a trial *de novo* so that she may "properly present her case and preserve all testimony for purposes of an appeal, should such be necessary."

We must first determine whether the 1994 amendment to T.C.A. § 37-1-159 (1991) is within the class of enactments that may be applied retroactively to pending cases. The general rule is that statutes are presumed to operate prospectively. *Kee v. Shelter Insurance*, 852 S.W.2d 226, 228 (Tenn. 1993). Nevertheless, as stated by the Supreme Court,

> [a]n exception exists ... for statutes which are remedial or procedural in nature. Such statutes apply retrospectively, not only to causes of action arising before such acts become law, but also to all suits pending when the legislation takes effect, unless the legislature indicates a contrary intention or immediate application would produce an unjust result.

*Id.* (citing *Saylors v. Riggsbee*, 544 S.W.2d 609, 610 (Tenn. 1976)). Thus, the question arises whether the statute at issue here is remedial or procedural--as opposed to substantive--in nature. In *Saylors*, the Supreme Court adopted the following description of "procedure" from a Kansas case:

7

> [T]he mode or proceeding by which a legal
> right is enforced, as distinguished from the
> law which gives or defines the right, and
> which by means of the proceeding, the court
> is to administer - the machinery, as
> distinguished from its product; ... including
> pleading, *process*, evidence, and practice
> .... Practice [is] the form ... for the
> enforcement of rights or the redress of
> wrongs, as distinguished from the substantive
> law which gives the right or denounces the
> wrong.

544 S.W.2d at 610 (quoting **Jones v. Garrett**, 192 Kan. 109, 386 P.2d 194 (1963))(emphasis in **Saylors** opinion). In addition, remedial statutes are defined as

> [l]egislation providing means or method
> whereby causes of action may be effectuated,
> wrongs redressed and relief obtained ...

**Black's Law Dictionary** 1293 (6th ed. 1990). *See also* **Morford v. Yong Kyun Cho**, 732 S.W.2d 617 (Tenn. App. 1987).

A legislative enactment changing the jurisdiction of a court is remedial in nature. *Id.* at 620. As noted in **Morford**, the United States Supreme Court has upheld the constitutionality of retroactively applying a purely remedial act which increases the jurisdiction of a court. *Id.* at 621 (citing **United States v. Union Pac. R.R.**, 98 U.S. (8 Otto) 569, 607-608, 25 L.Ed. 143 (1878)). Furthermore, a new statute that changes a rule of practice applies to all pending cases. **Frame v. Marlin Firearms**

8

*Co., Inc.*, 514 S.W.2d 728, 730 (Tenn. 1974); *Ross v. Tennessee Farmers Mut. Ins. Co.*, 592 S.W.2d 897, 898 (Tenn. App. 1979).

In light of these considerations, we conclude that the amendment to T.C.A. § 37-1-159 (1991) is procedural rather than substantive. This court has declared that

> [a]s applied to procedural changes governing the right of appeal the rule is that, where due provision has been made for the preservation of essential rights, the procedure for review or the extent of review are so far within the power of the legislature as to preclude the raising of questions of due process with respect to the method or procedure for review, the parties entitled to review, or the character of review in the appellate court.

*National Life & Accident Ins. Co. v. Atwood*, 194 S.W.2d 350, 353 (Tenn. App. 1946). Finding that the amendment in question is procedural, however, does not automatically permit its retroactive application. Even a procedural enactment may not be applied retroactively in the following circumstances: where the legislature has manifested a contrary intention; where application of the new law would impair a vested right or contractual obligation; or where immediate application of the statute would produce an unjust result. *Kee*, 852 S.W.2d at 228; *Saylors*, 544 S.W.2d at 610; and *Morford*, 732 S.W.2d at 620. We address each of these exceptions in turn.

9

Chapter 810 of the Public Acts of 1994 offers no indication that the General Assembly intended it to apply prospectively only. In the absence of any expression of that intent, we cannot assume such intent. Thus, retrospective application of the amendment is not prohibited by legislative intent. Likewise, application of the amended statute would not infringe upon any of Mother's vested rights, nor would it impair any contractual obligations. Article I, § 20 of the Tennessee Constitution prohibits the enactment of any "retrospective law, or law impairing the obligations of contracts." This provision, however, "proscribes only those laws that divest or impair vested substantive rights." *In re S.M., Jr.*, 1996 WL 140410 at *4. As this court has stated, the General Assembly may implement procedural or remedial changes in the law, and may substitute one remedy for another; there is no vested right in a particular remedy. *Atwood*, 194 S.W.2d at 353; *In re S.M., Jr.* 1996 WL 140410 at *4. In the case of *In re S.M., Jr.*, the court held that the same amended law at issue here could be applied retrospectively to deny a trial *de novo* in circuit court to two parents whose rights had been terminated. *Id*. at *5. Thus, Mother does not have a vested right in her avenue of appeal that would be disturbed by applying the new procedural law to her case.

The third limitation prohibits the retrospective application of a procedural change when doing so would produce an unjust result. *Saylors*, 544 S.W.2d at 610. Mother argues that

10

the only fair remedy here would be for this court to remand her case to the Bradley County Circuit Court for a trial *de novo*. She in essence maintains that the application of the amended law caused an unjust result, in that she was unable to adequately preserve the record in juvenile court or subsequently develop her case more fully in circuit court. Since there is no evidence of unfair prejudice, we disagree with her contention. Mother has not submitted any affidavits or other evidence clearly demonstrating that she would have conducted herself differently during the hearings had she anticipated a direct appeal to this court. She argues that she has been prejudiced by the lack of a transcript of the hearings; however, she has submitted, without objection from opposing counsel, a statement of the evidence that encompasses the three hearings in question. Furthermore, she failed to retain a court reporter for the second and third hearings, which were held after the effective date of the amendment.[4] Mother had sufficient notice of the change in appellate procedure, and of the increased significance of a hearing in juvenile court. *See In re S.M., Jr.*, 1996 WL 140410 at *5. She and her attorney were charged with knowledge of the amendment to T.C.A. § 37-1-159 (1991). Therefore, we find that application of the amended statute did not unjustly limit her ability to present her case in juvenile court, or to obtain review of that court's decision on appeal. *Id.* We hold that she is not entitled to a trial *de novo* in circuit court, under the

[4]As noted earlier, the effective date of the amendment was April 15 1994. The second hearing was held on April 20, 1994, and the third hearing took place on August 25 and 26, 1994.

11

language of T.C.A. § 37-1-159 (Supp. 1995), as amended effective April 15, 1994.  Her appeal is properly before us.

IV

Mother's second issue raises the question of whether the intervening petition filed by the Gardners complies with the requirements of T.C.A. § 37-1-147(a) (1991).[5]  The statute in effect at the time of the Gardners' Petition provided in pertinent part:

> The petition to terminate parental rights shall comply with § 37-1-121 and state clearly that an order for termination of parental rights is requested and that the effect thereof will be as stated in the first sentence of § 37-1-148.[6]

Mother contends that the Gardners' Petition did not comply with this provision, and that it therefore failed to put her on notice that a termination of her parental rights was being sought.  We disagree.

---

[5]We note, in passing, that the pertinent sections of the statute have recently been the subject of substantial amendment.  T.C.A. §§ 37-1-147 and -148 (Supp. 1995).

[6]T.C.A. § 37-1-148 (1991) provides, in pertinent part, as follows:

> An order terminating the parental rights of a parent terminates all of such parent's rights and obligations with respect to the child and of the child to such parent arising from the parental relationship ....

12

The Gardners in their petition set forth the following in one of their prayers for relief:

> That upon hearing of this cause, that the Court would terminate the parental rights of both natural parents of John Defriece and Katie Defriece.

The Petition makes no other mention of a termination of Mother's parental rights. Nevertheless, we believe that the prayer substantially complies with T.C.A. § 37-1-147(a) (1991). In reviewing the adequacy of particular pleadings, we give effect to their substance rather than their form and terminology. *Brown v. City of Manchester*, 722 S.W.2d 394, 397 (Tenn. App. 1986); *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. App. 1977). We find that the substance of the Petition sufficed to put Mother on notice that the Gardners were seeking a termination of her parental rights.

We also note that the record reveals that Mother failed to object, prior to this appeal, to any deficiency in the pleadings. The prayer in the Petition provided sufficient notice to obligate her to object to any technical noncompliance with the statute. She had ample opportunity to move for a dismissal or more definite statement, yet she failed to do so. It is well-settled that issues not raised at trial may not be raised for the first time on appeal. *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Lawrence v. Stanford*,

13

655 S.W.2d 927, 929 (Tenn. 1983). Accordingly, we find that Mother's second issue is without merit.

V

Mother's third issue presents the question of whether the trial court's termination of her parental rights is supported by clear and convincing evidence. Courts have long recognized the fundamental right of parents to the care, custody, and control of their children. *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)); however, parental rights are not absolute and may be terminated if there is clear and convincing evidence justifying such termination. *In re Drinnon*, 776 S.W.2d at 97 (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Therefore, pursuant to T.C.A. § 37-1-147(d)(1) (1991), we must determine whether the trial court properly found clear and convincing evidence: (1) that John had been removed from Mother's custody for at least one year; (2) that the conditions which led to the removal, or other similar conditions that would subject John to further abuse or neglect, still exist; (3) that there is little chance that these conditions will soon be remedied; (4) that continuing Mother's relationship with John will greatly diminish his chances of early integration into a stable and permanent home; and (5) that termination of Mother's parental rights is in John's best interests. *Tennessee Dept. Of Human Services v. Riley*, 689

14

S.W.2d 164, 165 (Tenn. App. 1984); *In re S.M., Jr.*, 1996 WL 140410 at *8. Each of these elements must be found by clear and convincing evidence. *Riley* at 165.

Mother concedes that John has been removed from her custody for more than one year. With regard to the second and third criteria, which involve the conditions that led to John's removal from Mother's custody, the evidence is less certain. There clearly is evidence that Mother has not provided John with a suitable home. The foster care plan indicates that Mother had problems with drugs and alcohol. The trial court found John to be dependent and neglected. In addition, the record contains evidence that Mother was involved with several different men following her divorce from John's natural father. She changed jobs and residences quite frequently, contributing to the lack of stability in John's life. The records of DHS also reflect her lack of progress at times toward the goals of the foster care plan.

The order of the trial court granting custody of John to the Gardners states that Mother had made no substantial improvement in her circumstances. At the time it terminated Mother's parental rights, the trial court found that she had demonstrated a "monumental" lack of stability, as well as an inability to provide for her children. In accordance with the fourth and fifth criteria listed above, the court went on to find that a termination of Mother's parental rights to John was in his

15

best interest and would greatly enhance his opportunity for integration into a stable, permanent home.

On the other hand, the record reflects some evidence of Mother's efforts toward improvement. She attended counseling sessions and completed parenting classes. Since the initial placement of her children, there have been no further allegations of drug or alcohol abuse by Mother. In fact, the DHS reports indicate that she has made some progress toward abating the conditions that necessitated placement of her children in the care of others. She has completed a Vocational Rehabilitation program, and at the time that her parental rights were terminated, she was working forty hours a week at a new job. Mother is also involved in a more stable relationship, with George Blackwell, a man she has been seeing for nearly a year. Mr. Blackwell has attended and completed parenting classes with her. Her residential situation has stabilized somewhat, as she has been living with Mr. Blackwell in a two-bedroom trailer supplied by his employer.

Given the foregoing, we cannot conclude that there is *clear and convincing* evidence that all of the requirements of T.C.A. § 37-1-147(d)(1) (1991) were met so as to justify a termination of Mother's parental rights. The clear and convincing standard imposes a heightened burden on those seeking to terminate the rights of a natural parent. To meet this

16

standard, a party must go beyond the mere threshold of a preponderance of the evidence:

> Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established.

*O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. App. 1995) (citations omitted). The evidence in this case simply does not rise to such a level. *See In re Drinnon*, 776 S.W.2d at 100.

We hold that the trial court erred in finding that the evidence established the elements of T.C.A. § 37-1-147(d)(1) (1991) by clear and convincing evidence. We acknowledge that our decision is in part influenced by evidence of a *partial* improvement in Mother's ability to provide a stable, caring environment for John. We hasten to add, however, that as far as the record now stands, the evidence clearly supports the conclusion that John's custody should stay with the Gardners. Since we are not privy to what has occurred since the last hearing date, August 26, 1994, we express absolutely no opinion as to whether or when John's custody should be returned to Mother. In fact, the correct outcome of this litigation may still involve the termination of Mother's parental rights; however, any such determination must be based upon clear and convincing evidence that each requirement for termination in

17

T.C.A. § 37-1-147(d)(1) (1991) has been met.  We leave that decision to the Juvenile Court upon remand of this cause.

The judgment of the trial court is vacated.  Costs on appeal are assessed against the appellee.  This case is remanded to the trial court for such further proceedings as may be necessary, consistent with this opinion.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Herschel P. Franks, J.

IN THE COURT OF APPEALS OF TENNESSEE

EASTERN SECTION

FILED

**October 4, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

STATE OF TENNESSEE            )
DEPARTMENT OF HUMAN SERVICES  )
                             )
        Petitioner-Appellee,  )
                             )
and                          )
                             )
                             )
WILLIAM D. GARDNER and        )
JOANN GARDNER,                )
                             )
        Intervening           )
        Petitioners-Appellees,) BRADLEY COUNTY JUVENILE COURT
                             ) C/A NO.  03A01-9604-JV-00150
                             )
                             )
v.                           )
                             )
                             )
                             )
DANA D. DEFRIECE,             )
                             )
        Respondent-Appellant. )
                             )
IN THE MATTER OF:             )
                             )
        JOHN DEFRIECE,        )
          a minor.            )


CONCURRING OPINION


        I concur in the majority opinion that not all of the circumstances necessary to terminate parental rights have been shown by clear and convincing evidence.


        I write separately to emphasize that I do not--and I am sure the majority of the members of the Court do not--condone the unmarried Mother living with Mr. Blackwell, and suggest that

19

continuance of such a relationship does not advance her goal to be reunited with her child.

_____
Houston M Goddard, P.J.