IN THE COURT OF APPEALS AT NASHVILLE

**FILED**

August 2, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C/A No. 01A01-9810-JV-00564 |
| DEPARTMENT OF CHILDREN'S | ) | DAVIDSON COUNTY |
| SERVICES | ) | Circuit Nos: |
| | ) | 9719-39064 |
| Petitioner-Appellee | ) | 9719-39065 |
| | ) | 9719-39182 |
| v. | ) | |
| | ) | |
| JAMES BOSTICK OSBORNE | ) | |
| | ) | |
| Respondent-Appellant | ) | |
| | ) | |
| IN THE MATTER OF: | ) | |
| SHERRY MONET HENDREN | ) | |

APPEALED FROM THE JUVENILE COURT OF DAVIDSON COUNTY

THE HONORABLE BETTY ADAMS-GREEN, JUDGE

Thomas H. Miller
P. O. Box 681662
Franklin, TN 37068-1662

    Attorney for Respondent-Appellant

Paul G. Summers
ATTORNEY GENERAL AND REPORTER

Douglas Earl Dimond
ASSISTANT ATTORNEY GENERAL
General Civil Division
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0499

    Attorneys for Petitioner-Appellee

AFFIRMED AND REMANDED

**Houston M. Goddard, Presiding Judge**

CONCUR:

FRANKS, J.
SUSANO, J.

O P I N I O N

Goddard, P.J.

This case involves a petition for termination of parental rights. The Respondent/Appellant, James Bostick Osborne, appeals from an order of the Juvenile Court of Davidson County terminating his parental rights as the biological father of Sherry Monet Hendren. We affirm the judgment of the Trial Court.

On December 22, 1997, the State of Tennessee, Department of Children's Services, the Petitioner/Appellee, obtained custody of Barbara and Willie Hendren's three children: Sherry Monet Hendren, Ricky Donneil Hendren, and Shanta Monique Hendren. Although Mr. Hendren is listed as the father on each child's birth certificate, DCS discovered during its investigation that Mr. Osborne might be the biological father of Sherry Hendren and that Michael Patterson might be the biological father of Ricky and Shanta Hendren. After this discovery, DCS sought to notify Mr. Osborne and Mr. Patterson of its petition to terminate the parental rights to the three children. This appeal concerns only the termination of Mr. Osborne's parental rights to Sherry Monet Hendren, who was almost twelve years old at the time of the trial.

2

Mr. Osborne presents three issues, which we restate, for our consideration:

> 1. Whether the court erred in finding that he willfully abandoned his daughter;
>
> 2. Whether the court erred in terminating his parental rights based upon persistence of conditions dangerous to his daughter; and
>
> 3. Whether the court erred in finding that termination of his parental rights was in the best interest of his daughter.

After Ms. Katie Finney, a DCS case manager, determined that Mr. Osborne was incarcerated, she sent him a letter in May 1998 inquiring whether he is Sherry's father. In June 1998, Mr. Osborne, who was serving a sentence for burglary, responded that he is indeed her father. On June 30, 1998, DCS filed a petition to terminate Mr. Osborne's parental rights.

The DCS petition stated that under Tennessee Code Annotated §§ 36-1-102(1)(A)(i) and 36-1-102(1)(A)(iv), Mr. Osborne had willfully abandoned his daughter and that termination of Mr. Osborne's parental rights was in his daughter's best interest.

On October 9, 1998, DCS filed an amended petition which stated that Mr. Osborne was incarcerated at the time the petition was filed and stated that Mr. Osborne had failed to visit or support his daughter in the four months preceding his incarceration or engaged in conduct prior to his incarceration that showed wanton disregard for his daughter's welfare.

In early October 1998, Ms. Finney visited Mr. Osborne to discuss his daughter and her siblings. According to Ms. Finney's testimony, Mr. Osborne was not opposed to the termination of his parental rights if his daughter could remain with her siblings. Although Mr. Osborne stated that he would like to see his daughter, Ms. Finney stated that he never requested a visit.

At the trial on October 12, 1998, Mr. Osborne testified that he was participating in a behavior modification program called "Lifelines" while in jail and that the program had made a profound impact on his life. He testified that he was scheduled to be released from jail on November 2, 1998 and then go to a halfway house for three months. He further stated that he hoped to rear his daughter and her two siblings, although he was not their father, but he did not know when he could provide a home for them. He was uncertain as to what his relationship with his

4

wife and young son would be since he had had no contact with them in seven months.

Mr. Osborne admitted that there was a period of approximately four years of Sherry's life that he lost total contact with her. Mr. Osborne never legitimated Sherry as his child, although she is aware that he is her father, and he never paid child support for his daughter.

Ms. Finney of DCS testified that Mr. Osborne could not be considered as a placement for children until he had been sober at least one year. Ms. Finney further testified that termination of Mr. Osborne's parental rights was in Sherry's best interest and that Sherry, who was almost twelve years old at the time, needed a permanent, stable home to prepare her for her teenage years.

Mr. Steve Walker, Sherry's guardian ad litem, stated to the Trial Court that Sherry was willing to live with her father if her two siblings could live with them. If that was not possible, then Sherry preferred to be placed in a home along with her brother and sister.

5

On October 13, 1998, the Trial Court filed a decree of guardianship and thus, terminated Mr. Osborne's parental rights. The Trial Court concluded that Mr. Osborne had willfully abandoned his daughter for more than four consecutive months preceding the filing of this petition to terminate his parental rights by not visiting during that period of time. Furthermore, the Trial Court found that Mr. Osborne was

> incarcerated during all or part of the four months immediately preceding the filing of the petition and willfully failed to visit or support or make reasonable payments toward the support of the child for four consecutive months immediately preceding such incarceration **OR** has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child.
> That pursuant to T.C.A. 36-1-113(g)(3)(A), the said children have been removed from Defendant parents for more than six (6) months and the conditions which led to removal or other conditions which in all reasonable probability would cause the children to be subjected to further abuse or neglect and which, therefore, prevent the children's return to the care of the Defendants still persists; that there is little likelihood that these conditions will be remedied at an early date so that the children can be returned to the Defendants in the near future; and the continuation of the legal parent and child relationship greatly diminishes the children's chances of early integration into a stable and permanent home.

First, Mr. Osborne argues that he did not willfully abandon his daughter. He explains that he was incarcerated in December 1997 on a burglary conviction when his daughter was placed in DCS custody. Mr. Osborne contends that although DCS did not know that he was Sherry's father until March 1998, it did not contact him until May 1998 and did not speak with him until

6

October 1998.  Mr. Osborne maintains that before meeting with Ms. Finney from DCS the week before the trial in October 1998, "he had no meaningful way to inform DCS that he desired visitation with [Sherry]."  He asserts that before he was incarcerated he saw Sherry "frequently" and had a "good relationship" with her.

Furthermore, Mr. Osborne argues that he had no income during his incarceration, and thus, was unable to pay child support.  Consequently, his failure to pay child support was not willful.  Moreover, Mr. Osborne contends that the State did not show by clear and convincing evidence that his conduct before his incarceration exhibited a "wanton disregard" for his daughter's welfare.  Although Mr. Osborne admits to a long history of drug abuse, he maintains that such abuse or a criminal conviction does not constitute "wanton disregard" for a child's welfare.

Next, Mr. Osborne argues that the court erred by finding that dangerous conditions to his daughter would likely persist.  Mr. Osborne maintains that he has undergone a "life-changing" behavior modification program while incarcerated and no longer uses drugs.  He further contends that there are no allegations of abuse or neglect against him because at the time his daughter was removed from her home, she was living with her mother.

7

Mr. Osborne further argues that termination of his parental rights is not in the best interest of his daughter. He asserts that DCS failed to make reasonable efforts to "reunite" him with his daughter, with whom he had a good relationship.

The State argues that the Trial Court properly terminated Mr. Osborne's parental rights for abandonment. The State maintains that Mr. Osborne was incarcerated in the four months preceding the filing of the petition on June 30, 1998 to terminate his parental rights. While the State concedes that Mr. Osborne's options for visitation were limited, it maintains that he did not contact his daughter or request a visit with her until the week before the trial, which was several months after he learned of the State's efforts to locate him. The State maintains that these facts constitute a willful failure to visit under Tennessee Code Annotated § 36-1-101(1)(A)[1].

The State further argues that Mr. Osborne abandoned his daughter pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(iv) in the four months before his incarceration. It maintains that Mr. Osborne paid no child support, instead spending all his paycheck on crack cocaine, and had no more than "token visitation" with his daughter. It argues that after five

[1]Although the State refers to Tennessee Code Annnotated § 36-1-101(1)(A) in its brief, the section that refers to a willful failure to visit is § 36-1-102(1)(A).

years of no contact, Mr. Osborne saw his daughter on some Saturdays during the eight months before his incarceration and even then, was out of contact with her for as long as a month.

Moreover, the State asserts that Mr. Osborne's drug abuse and criminal conduct constitute "wanton disregard" for his daughter's welfare, citing In re Shipley, an unreported opinion of this Court, filed in Knoxville on September 29, 1997 (finding that the father's criminal conduct and drug abuse showed a wanton disregard for the welfare of his children). The State contends that Mr. Osborne has demonstrated by past performance that he could remain sober only while incarcerated, and when released, retreats to a life of drug abuse. The State maintains that Mr. Osborne, who claimed to be in recovery while incarcerated, had one month remaining to serve in jail and an additional three months in a halfway house before he would be free. The State also notes that DCS would not consider placing Mr. Osborne's daughter with him until he had demonstrated a year of sobriety.

The State contends that the termination of Mr. Osborne's parental rights was in the best interest of his daughter. It explains that Mr. Osborne was unable to provide a home for his daughter, had not maintained regular contact or visitation with her, had paid no child support during her lifetime, and had a chronic drug abuse problem.

9

Finally, the State argues that Mr. Osborne's argument that DCS did not make reasonable efforts to "reunite" his daughter with him is without merit. Although the State lists numerous reasons why this argument is without merit, it asserts primarily that its mandate to "reunify" families does not apply to putative parents such as Mr. Osborne, who has not established a familial relationship to which his daughter could have returned.

In accordance with Rule 13(d) of the Tennessee Rules of Appellate Procedure, this Court reviews a Trial Court's decision to terminate parental rights <u>de novo</u> upon the record, with a presumption of correctness of the findings of fact by the Trial Court unless the preponderance of evidence is otherwise. However, no presumption of correctness attaches to a lower court's decisions regarding questions of law. <u>Ganzevoort v. Russell</u>, 949 S.W.2d 293, 296 (Tenn. 1997).

The decision to terminate parental rights must be established by "clear and convincing evidence." <u>See</u> <u>State Department of Human Services v. Defriece</u>, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). Tennessee Code Annotated § 36-1-113(c) provides in relevant part:

> Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination or [sic] parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tennessee Code Annotated § 36-1-113(g)(3)(A) (Supp. 1997)[2] provides the possible grounds for termination of parental rights:

Termination of parental or guardianship rights may be based upon any of the following grounds:

* * * *

The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a stable and permanent home.

---

[2]This statute was amended with an effective date of July 1, 1998. The State filed its petition for termination of parental rights on June 30, 1998. The 1998 amendment substituted "Initiation of termination" for "termination"; in (g)(3)(A)(i), "safe" was inserted preceding "return"; in (g)(3)(A)(ii) "safely" was inserted preceding "returned"; in (g)(3)(A)(iii) "safe" was inserted preceding "stable." See Amendments, Tenn. Code Ann. § 36-1-113 (Supp. 1998).

11

Tennessee Code Annotated §§ 36-1-102(1)(A)(i) and 36-1-102(1)(A)(iv) provide in relevant part:

"Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;

* * * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration which exhibits a wanton disregard for the welfare of the child.

Tennessee Code Annotated § 36-1-113(h) (Supp. 1997)[3] provides the following regarding the best interest of a child:

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

---

[3]This statute was amended with an effective date of July 1, 1998. The State filed its petition for termination of parental rights on June 30, 1998. The 1998 amendment added a new (h) and redesignated the former (h)-(p) as present (i)-(q); in present (i)(1) inserted "safe and" following "it"; in present (i)(7) inserted "in a safe and stable manner" following "child" and in present (i)(8) inserted "safe and stable" preceding "care." See Amendments, Tenn. Code Ann. § 36-1-113 (Supp. 1998).

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward other children in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

This Court must determine whether the evidence in the record preponderates against the Trial Court's findings of fact supporting termination. The State argues that the primary evidence of Mr. Osborne's "wanton disregard" for the welfare of his daughter is his criminal conduct and drug abuse prior to his incarceration.

13

During his testimony, Mr. Osborne acknowledged that twelve years ago he had been convicted of burglary and that he is currently serving a sentence for burglary. He also admitted that he had abused drugs since the age of twelve and began using cocaine when he was fifteen or sixteen years old, thus admitting to abusing drugs for approximately twenty-seven years. Mr. Osborne testified that except for periods of incarceration, the longest period of time that he has been free from drugs is sixty days. He testified that he did not think that abusing drugs indicated abuse or neglect for a child's welfare.

Furthermore, Mr. Osborne admitted that he never legitimated Sherry, never paid child support, and had no home to provide for his daughter, although he had completed a parenting class and had participated in a behavior modification course called "Lifelines" while incarcerated.

We are of the opinion that the evidence in the record does not preponderate against the Trial Court's findings of fact. Mr. Osborne admitted to chronic drug abuse and criminal conduct and admitted that he had no home to provide for his daughter. During his daughter's life, Mr. Osborne never provided support for her, and his relationship with her was sporadic at best. Mr. Osborne's daughter has experienced a disturbing childhood, so her placement into a stable, permanent home as soon as possible is

14

critical as she enters adolescence.  Therefore, we agree with the Trial Court that termination of Mr. Osborne's parental rights is in the best interest of his daughter.

For the foregoing reasons, the judgment of the Trial Court is affirmed.  Costs on appeal are taxed to Mr. Osborne. This case is remanded to the Trial Court for enforcement of the judgment and collection of costs below.

_____
Houston M. Goddard, P.J.


CONCUR:


_____
Herschel P. Franks, J.


_____
Charles D. Susano, Jr., J.

15