# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 9, 2000 Session

## BRADLEY J. BROWN v. MICKEY JOE ROGERS

**Appeal from the Circuit Court for Rutherford County**
**No. 33086     Don R. Ash, Judge**

---

**No. M2000-01277-COA-R3-CV - Filed February 5, 2001**

---

The biological father appeals the termination of his parental rights which allowed the adoption of his two children by the stepfather after the mother's death. Although the evidence that the father abandoned his children was clear and convincing, the proof, when supplemented with post-judgment facts, was insufficient to determine whether termination of parental rights was in the best interests of the children. We remand for a hearing on the children's best interests.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., and WILLIAM B. CAIN, JJ., joined.

David Goad, Murfreesboro, Tennessee, for the appellant, Mickey Joe Rogers.

Daryl M. South, Murfreesboro, Tennessee, for the appellee, Bradley J. Brown.

## OPINION

Mickey Rogers, the appellant, and his then-wife, Lisa (now deceased) had two children, a son, born May 1990, and a daughter, born May 1992. The family lived in Kentucky when the parents separated, and the mother brought the children to Tennessee, where her father and stepmother lived. Mr. Rogers moved to Virginia. The mother obtained a divorce and custody of the children in 1994. After the divorce was final, Bradley Brown, the appellee, moved in with the mother and the children. Mr. Brown married the mother in 1996 and they had a son who was three years old at the time of the hearing in this matter. Mr. Rogers also remarried and started a new family. His wife was in the U.S. Navy. She was transferred to San Diego in August or September of 1996. Mr. Rogers visited his family in Tennessee on his way to California and spent some time with his children then. After moving to California, Mr. Rogers was not employed, choosing to stay at home with his two younger children because of his wife's absences due to her naval assignments and because of the high cost of day care.

On February 24, 1999, Lisa (Rogers) Brown died of pneumonia. Some time later Mr. Brown called Mr. Rogers to inform him of the death, and Mr. Rogers came to Tennessee for the children. The record is unclear what, if any, contact Mr. Rogers had with the children at that point. On March 15, 1999, Mr. Rogers filed a petition asking immediate return to him of his minor children. An emergency hearing was held later that day. A few minutes before the hearing Mr. Brown filed a petition seeking to terminate Mr. Rogers's parental rights so he, the stepfather, could adopt the children. After the emergency hearing, Mr. Brown was awarded temporary custody, pending a final hearing. Mr. Rogers was granted visitation on specific dates and additional telephonic visitation pending another hearing. Mr. Rogers was also ordered to pay previously ordered child support. The trial court consolidated the two petitions. After another hearing, Mr. Rogers was given additional specific dates of daylong visitation.

Mr. Rogers remained in Tennessee, got a job, visited with his children who are the subject of this action, and paid the support ordered by the court. His sister-in-law cared for his younger children. The final hearing on both petitions was held April 14, 1999.

Although the testimony was disputed on a number of specific issues, it is undisputed that Mr. Rogers did not make child support payments after September 1996. Conflicting testimony was presented as to whether regular payments were made before then, but the father admitted he had not made support payments since 1996, when he left his employment. His reason for not paying the support was that he had not worked for the past two years, after moving to San Diego, because he was caring for the children of his second marriage. He said that he did not attempt to modify the child support order based on his reduced income because he could not afford counsel.

The father testified that he last visited the children in 1996 while on his way to San Diego. He testified that he called the children every Sunday for a year or more after that, but then his former wife began obstructing his efforts to contact the children. The father did not dispute his failure to visit the children, but asserted that he was prevented from doing so by his former wife, the children's mother. Mr. Rogers admitted that he had spent time in Tennessee visiting his mother and other family, but said that the children's mother would not allow him to visit the children, threatening to have him arrested if he attempted to see them. The stepfather denied that the mother had ever prevented the father from calling or visiting the children. Similarly, the stepfather testified that the biological father did not send gifts or cards to the children for Christmas or their birthdays, although the father's family brought gifts on occasion; Mr. Rogers claimed he had sent gifts and cards on holidays and birthdays, and that, on occasion, he sent gifts through his family, asking that they not reveal that he was the source of the gifts.

The trial court found Mr. Rogers had abandoned the children and ordered that Mr. Rogers's parental rights be terminated. The court held a later hearing on Mr. Brown's petition to adopt the children. The petition was granted, and that order, although not the transcript, appears in the record on appeal. Mr. Rogers appeals the termination of his parental rights.

## I. Standard of Review

Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and "severing forever all legal rights and obligations" of the parent. Tenn. Code Ann. § 36-1-113(*l*)(1). Because of its consequences, which affect fundamental constitutional rights, courts apply a higher standard of proof when adjudicating termination cases. *See O'Daniel v. Messier*, 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995). To justify the termination of parental rights, the grounds for termination, and the fact that termination is in the best interests of the child, must be established by clear and convincing evidence. *See* Tenn. Code. Ann. § 36-1-113(c) (Supp. 2000); *State Dep't of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). "This heightened standard serves to prevent the unwarranted termination or interference with the biological parents' rights to their children." *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

> The "clear and convincing evidence" standard defies precise definition. While it is more exacting than the preponderance of the evidence standard, it does not require such certainty as the beyond a reasonable doubt standard. Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. It should produce in the fact-finder's mind a firm belief or conviction with regard to the truth of the allegations sought to be established.

*O'Daniel*, 905 S.W.2d at 188 (citations omitted).

Under this heightened standard of review, we must first review the trial court's findings in accordance with Tenn. R. App. 13(d). That review is *de novo*, with a presumption of correctness for the trial court's findings of fact, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). Then, we must determine whether the facts make out a clear and convincing case in favor of terminating the parents' parental rights. *See In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988).

## II. Grounds for Termination of Parental Rights

Parental rights may be terminated in only a limited number of statutorily defined circumstances. In order to terminate a parent's rights, one or more of the asserted statutory grounds must be proved by clear and convincing evidence. *See* Tenn. Code Ann. § 36-1-113(c).

The ground for termination in this case was abandonment, which requires a showing of either willful failure to visit or willful failure to support.[1] The trial court found, by clear and convincing

---

[1] Tenn. Code Ann. § 36-1-102 defines "abandonment" as follows:

(continued...)

evidence, that Mr. Rogers abandoned his children on both bases. Specifically, the court found, by clear and convincing evidence, that Mr. Rogers was willfully underemployed, not financially disabled, and by his own testimony confirmed that he had failed to support the children. The evidence does not preponderate against these findings; it supports them.

On appeal, Mr. Rogers asserts that the trial court improperly applied the willfulness requirement, in contravention of the Tennessee Supreme Court's holding in *Tennessee Baptist Children's Home v. Swanson*, 2 S.W.3d 180 (Tenn. 1999). In that case, the court struck down a definitional section of the failure to support statute which, in effect, eliminated the courts' ability to determine actual willfulness, or intent, on an individualized consideration of the facts of a particular case. *See Swanson*, 2 S.W.3d at 188. At the hearing in the case before us, the trial court and counsel did discuss the standards declared unconstitutional in *Swanson*; however, our reading of the trial court's ruling does not support an argument that the court relied upon or applied that standard. To the contrary, the court determined that Mr. Rogers had not supported his children because of his voluntary underemployment. In other words, the court examined the facts of the particular situation presented and applied a standard requiring willfulness.

Mr. Rogers, the father, continues to assert that his unemployment, admittedly voluntary so that he could stay home with his younger children, rendered him unable to pay the support, thus making his failure to support the older children not willful. In essence, Mr. Rogers attempts to convince this court that he was entitled to nurture his second family at the expense of his first. We are not persuaded and find no error in the trial court's decision. Mr. Rogers did not support his children, and his financial inability to do so was of his own making, a willful and voluntary choice. We affirm the trial court's finding of willful failure to support.[2]

---

[1](...continued)
(1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

    (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or make reasonable payments toward the support of the child;

            \*\*\*

(F) Abandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child . . .

[2] The statute requires failure to support for at least the four months immediately preceding the filing of the petition. *See* Tenn. Code Ann. § 36-1-102(1)(A). Thus, the support paid by Mr. Rogers pending the final hearing in this matter cannot be used to show he "repented of" his prior failure to support for purposes of determining abandonment, because that support was paid after the filing of the petition. *See* Tenn. Code Ann. § 36-1-102(1)(F). The trial court did not consider it.

The failure to support finding is sufficient to establish abandonment. However, the trial court additionally found, by clear and convincing evidence, that Mr. Rogers's "visitation with his children, if any, was only token in nature" and specifically found Mr. Rogers's testimony regarding his attempts to contact the children and the thwarting of those attempts by the children's mother not credible. The court went on to find, by clear and convincing proof, that Mr. Rogers had not participated in the children's lives for a long time and had a "conscious disregard or indifference" to the responsibilities of both support and visitation.[3] The trial court's finding regarding the failure to visit is not raised by Mr. Rogers on appeal; thus, we need not address it.

We agree with the trial court that, because he willfully failed to support them, Mr. Rogers abandoned his children, as that ground is defined by statute, that such abandonment was shown by clear and convincing evidence, and, therefore, that grounds for termination of his parental rights exist.

### III. Best Interest of the Children

Termination of parental rights requires, in addition to grounds, a showing, by clear and convincing evidence, that the termination is in the best interest of the child. *See* Tenn. Code Ann. § 36-1-113(c)(2). "It is therefore beyond question that before a parent's rights can be terminated, there must be a showing that the parent is unfit or that substantial harm to the child will result if parental rights are not terminated." *Swanson*, 2 S.W.3d at 188. The best interest analysis has been considered the equivalent of a determination of whether substantial harm will result to the child if parental rights are not terminated. *See State v. Pruitt*, No. M2000-00416-COA-R3-CV, 2000 WL 827957 at *11 (Tenn. Ct. App. June 27, 2000) (no Tenn. R. App. P. 11 application filed) (best interests of child required termination because substantial harm would result otherwise); *Bryant v. Bryant*, No. M1999-01280-COA-R3-CV, 2000 WL 1483217 at *6 (Tenn. Ct. App. Oct. 10, 2000) (no Tenn. R. App. P. 11 application filed) ("parental rights may be terminated only when continuing the parent-child relationship poses a substantial threat of harm to the child").

Because the law requires both grounds and a determination of best interest, it cannot be presumed that the existence of grounds necessarily leads to the conclusion that termination is warranted. Termination of a person's constitutionally-protected rights to parent a child requires an individualized consideration based on the facts of a particular situation, including an individualized determination of a child's best interest. Our legislature has listed some, but not all, of the factors a court is to consider when determining whether termination is in the best interest of the child:

---

[3] The failure to visit issue is somewhat complicated, because the statute requires failure to visit for four consecutive months immediately preceding the filing of the termination petition. The evidence indicates that Mr. Rogers came to Tennessee upon learning of his former wife's death in order to retrieve his children. The record does not tell us how much contact and visitation he had with them at that time. It is clear that his efforts were opposed by Mr. Brown. Having been obstructed in his efforts, Mr. Rogers filed his petition seeking an order requiring Mr. Brown to give physical custody of the children to him. Only after notice of this petition did Mr. Brown file his petition to terminate Mr. Rogers's parental rights. *But see* Tenn. Code Ann. § 36-1-102(1)(C) (defining "token visitation").

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i).

This list reflects the concerns present in the situation where a child has been removed from the parent's custody because of neglect, abuse, or other problems. In such situations, when it becomes obvious that a child will not be able to safely return to a parent's custody, that child's interest may indeed be best served by terminating the rights of the parent so that the child may be adopted into a stable and nurturing home. That was not the situation in the case before us. After their mother's death, Mr. Brown, the stepfather, sought to terminate Mr. Rogers's parental rights so that he could adopt the children. Evidence at trial indicated that Mr. Brown had taken an active role in parenting the children while their mother was alive.

While one might assume that remaining with the stepfather provided the greatest opportunity for stability in the children's lives, there was no evidence regarding the effect of a potential return to the father's custody. Mr. Rogers came to Tennessee to get his children after he learned that his former wife had died. The record does not reflect what, if any, contact the children had with their father when he returned. He filed a petition asking for physical custody of his children, premised on the belief he had legal custody as their surviving parent, because Mr. Brown refused to allow him

to remove the children. After filing his petition, he was allowed regular visitation with the children, and the testimony indicates these visits reestablished or repaired the parent-child relationship.

In this case, we have a father who has in the past failed to live up to his parental responsibilities, but who acted immediately to do so when he learned his children's mother had died. He came to Tennessee, brought his younger children here, got a job here, and paid support and regularly visited the children who are the subject of this action. Meanwhile, we have a stepfather who had undertaken and largely fulfilled the responsibilities of parenting these children. He did not want to see the children taken out of his care. These children, who had lost their mother, had two people stepping forward to provide homes for them. Unfortunately, in view of the children's recent loss and their undoubtedly fragile emotional state, these two people could not reach a resolution which allowed the children the comfort offered by both. Consequently, the court was asked to make this difficult and agonizing decision, and decided that termination was in the best interest of the children.

When making its decision, however, the trial court did not have the benefit of information which has been presented to us after the argument in this appeal and which deals with events taking place after the trial court's decision.[4] We have been provided with an order of the Juvenile Court of Rutherford County, entered October 19, 2000, finding the two children who are the subject of this action and their younger brother to be dependent and neglected and placing them in the custody of Lisa Brown's father and stepmother. Mr. Brown was ordered to pay child support and was allowed only supervised visitation.

While the evidence at the April 14, 1999 hearing provided, in the trial court's judgment, sufficient evidence of the children's best interest, the trial court could not, of course, predict the future course of events. We are unable to ignore those events, what little we know of them, and cannot conclude that the evidence from the hearing, supplemented by the post-judgment facts recorded in the juvenile court's order, clearly and convincingly establishes that the children's best interest is served by termination of Mr. Rogers's parental rights. Therefore, we vacate the trial court's earlier judgment terminating Mr. Rogers's parental rights and remand to the trial court for a determination of whether the evidence now shows, by a clear and convincing standard, that termination of the father's parental rights is in the best interest of the two children who are the subject of this cause.

---

[4]At the argument of this matter, counsel informed this court that certain post-judgment events had taken place which this court should consider. After several post-argument filings by both parties, we decline to consider most of the content as post-judgment facts under Tenn. R. App. P. 14. However, we do take notice of the certified copy of the juvenile court's order.

# V.  Conclusion

We vacate the order terminating the parental rights of Mickey Joe Rogers and remand this case for findings regarding the children's best interest.  Those best interests are to be determined on the facts as they exist as of the date of the hearing.  Because an adoption, in situations such as this, must be predicated on a termination of parental rights, the necessary result of our decision is that the adoption by Mr. Brown is also vacated.

Because these children have been found dependent and neglected, the juvenile court now has exclusive jurisdiction over matters involving their custody until they reach the age of majority. *See* Tenn. Code Ann. § 37-1-103(c). We do not, however, interpret this jurisdictional statute to remove jurisdiction from the trial court herein regarding the termination of parental rights petition filed well before the juvenile court's action.  Thus, on remand, the circuit court shall conduct whatever proceedings may be necessary to determine whether, by clear and convincing evidence,  the best interests of these two children are served by termination of the parental rights of their father.  The determination by the juvenile court is *res judicata* as to the matters therein, and the trial court should not allow inquiry into the validity of the juvenile court's findings.

The sole issue before the trial court on remand is whether termination of Mr. Rogers's parental rights is in the best interest of the children.  We have affirmed the court's finding of grounds. Unless and until the trial court herein enters a final order terminating his rights, Mr. Rogers shall be considered by all courts, including the juvenile court, as the children's father.  Since the children are now under the jurisdiction of the juvenile court, that court shall make any determinations regarding visitation, temporary custody, and similar matters.

Costs are taxed to the appellee, Bradley J. Brown, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE