# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

IN THE MATTER OF:                         )
                                          )
Tamika Nicole Baker,                      )   Shelby Juvenile No. E6404
Brandon Alan Austill,                     )
Michael Christopher Austill,              )   Appeal No. W1998-00606-COA-R3-CV
Kimberly Michelle Austill,                )
Charles Damion Ray Austill,               )
Phillip Hunter Austill,                   )
                                          )
     Minor Children                      )
                                          )
                                          )
                                          )

FILED

December 28, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

APPEAL FROM THE JUVENILE COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE
THE HONORABLE GEORGE BLANCETT, SPECIAL JUDGE

**JAMES H. BRADLEY**
**WEBB A. BREWER**
**Memphis Area Legal Services, Inc.**
Memphis, Tennessee
Attorneys for Appellants, Charles & Linda Austill

**SABRINA D. BALL**
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED**

                                         **ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**HOLLY KIRBY LILLARD, J.**

Charles Ray Austill and Linda Christine Baker Austill appeal from the judgment of the Juvenile Court of Memphis and Shelby County, which terminated the Austill's parental rights in regards to six of their minor children.[1] We affirm the judgment of the trial court.

## I. Facts and Procedural History

Charles and Linda Austill ("Appellants") are husband and wife and, except for Tamika Baker, are the parents of the children subject to the trial court's termination of parental rights.[2] In February of 1994, the Department of Human Services ("DHS") filed a petition in the Juvenile Court of Memphis and Shelby County, alleging that the Austill's six minor children were dependent and neglected.[3] The petition resulted from twenty-nine (29) separate referrals to DHS. According to the DHS case manager, there were terrible living conditions in the home, and the parents were not addressing the children's physical and emotional problems. Specifically, the petition alleged that the home contained trash and "an excess of accumulated piles of dirty clothes." Some of the children had received numerous small injuries over a long period of time. Tamika, the oldest child, was said to have an excess of responsibility in caring for the younger children. Also, Brandon and Michael were said to be sleeping in the basement of the house where a hole in the wall had allowed standing water to form on the floor. The petition further stated that reasonable efforts to prevent removal had been made and that the parents refused referrals to parenting classes and individual counseling.

On March 9, 1994, the Juvenile Court awarded temporary custody of the children to the Tennessee Department of Human Services, and the parties were referred to the Center for Children in Crisis ("CCC"). A Plan of Care was developed which was intended to address the array of physical and mental problems of the children, as well as the

---

[1] Three children were born to the Austills after the children which are the subject of this appeal were removed from the household. It is the understanding of the court that these three children remain in the custody and care of the Austills.

[2] Tamika Baker is the natural child of Linda Baker and an unknown father. A default judgment was entered against the father of Tamika Baker and the termination of his parental rights is not an issue in the present appeal.

[3] The children named in the petition were Tamika, then age 9, Brandon, 8, Michael, 6, Kimberly, 4, Charles, 3, and Phillip, 1.

deficiencies in Mr. and Mrs. Austill's parenting skills. The goal of the plan was reunification of the family.

The Center for Children in Crisis interviewed and tested the parties. The CCC evaluation revealed that Mrs. Austill had been physically, emotionally, and sexually abused during her childhood and had spent time in foster care. Dr. Sonny Gentry testified on behalf of CCC and opined that Mrs. Austill's childhood negatively impacted her parenting ability. The Center concluded that Mr. and Mrs. Austill had very limited parenting skills and very limited comprehension of the needs of the children. It was recommended that both parents be referred for parenting classes, anger management, and intensive counseling on an individual basis. It was also recommended that the children remain in placements out of the Austill home until Mr. and Mrs. Austill had demonstrated some progress in the recommended interventions.

The Austills were referred to Bruce Reed, a counselor at Frayser Family Counseling, in June of 1994. According to Mr. Reed, the initial referral contained numerous reports of neglect and physical abuse, as well as allegations of sexual abuse of both Tamika and Brandon by an uncle.

Both parents completed the parenting classes. However, it is evident from the record that neither Mr. nor Mrs. Austill was successful in the individual counseling sessions. Mrs. Austill's counseling sessions occurred sporadically between September of 1994 and March of 1996.[4] However, after March of 1996, she attended only one session. Mr. Reed sent a letter to Mrs. Austill in June of 1996 inquiring as to whether she desired to continue counseling. That letter stated that if Mrs. Austill did not contact Mr. Reed, he would assume that she no longer desired the services and her case would be closed. Mrs. Austill testified that she tried unsuccessfully to reach Mr. Reed after receiving his letter. Mr. Reed, however, testified that he received no reply from Mrs. Austill. As a result, he closed the case for noncompliance in June of 1996.

_____

[4] Mrs. Austill was scheduled for thirty-four (34) individual therapy sessions, but she attended only twenty (20) of those sessions.

3

The attempts at counseling Mr. Austill reached substantially similar results. His case was closed for noncompliance on April 7, 1995, after he declined individual counseling and attended only one marital counseling session. His case was reopened in October of 1995, but it was subsequently closed again in April of 1996 for noncompliance.[5]

The Plan of Care also required the parents to attend meetings at the Center for Children in Crisis and maintain contact with the Department of Children's Services. Mrs. Austill admitted that she missed several of the meetings at CCC. Mrs. Austill also admitted that she went six to eight months without contacting the Department of Children's Services.

On September 17, 1996, the goal in regards to the Austill's children was changed to adoption. Also, visitation with the parents was suspended. Ultimately, on May 22, 1997, the Court Appointed Special Advocate of Memphis and Shelby County, Inc. ("CASA") filed a "petition for Termination of Parental Rights" in the Juvenile Court, seeking to terminate the parental rights of Charles and Linda Austill as to the six children previously removed from the home.[6] The petition asserted two grounds for termination: 1) that the Austills had substantially failed to comply with the statement of responsibility contained in the Permanency Plan for the children, pursuant to T.C.A. §§ 36-1-113(g)(2) and 37-2-403; and 2) that all the conditions listed in T.C.A. § 36-1-113(g)(3)(A) were present. The petition further asserted that termination was in the best interests of the children. By order entered on October 21, 1998, the Juvenile Court terminated the Austill's parental rights in regard to the six children.[7] In terminating the Austill's parental rights, the trial court made the following pertinent findings:

> 11. It is the finding of the Court that it was the unanimous opinion of the professionals at trial that the children would still be at risk if placed in the home with the parents.
>
> 12. The Court finds that the Respondents, Linda Christine Baker Austill and Charles Ray Austill, withdrew efforts to rehabilitate and reconcile the family when they abandoned the counseling and other services offered to

[5] Apparently, Mr. Austill's work schedule prevented him from attending his sessions. Nevertheless, his failure to attend the sessions constituted noncompliance.

[6] The original petition was apparently lost and a duplicate petition was filed in September of 1998 accompanied by a motion requesting that the duplicate petition relate back to the original date of filing.

[7] As previously noted, a default judgment was entered against the unknown father of Tamika Baker.

4

them by the Department of Children's Services.

This appeal followed.

On appeal, the appellants assert two grounds in support of reversing the decision of the juvenile court. First, they argue that the decision to terminate their parental rights was not supported by "clear and convincing" evidence. Second, they argue that the trial court impermissibly based its decision on evidence that should have been excluded as hearsay and/or opinion.

## II. Law and Analysis

The decision to terminate parental rights involves fundamental constitutional rights. O'Daniel v. Messier, 905 S.W.2d 182, 186 (Tenn. Ct. App. 1995). Therefore, the court must find that the grounds for termination of parental rights have been established by "clear and convincing evidence." See Tenn.Code Ann. § 36-1-113(c)(1) (1996); State Dept. of Human Servs. v. Defriece, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusion to be drawn from the evidence." O'Daniel, 905 S.W.2d at 186.

Parental rights can be terminated in only a limited number of statutorily defined circumstances and then, only if a court determines that termination is in the child's best interests. See Tenn.Code Ann. § 36-1-113(c)(2) (1996). Parental rights may be terminated only when continuing the parent-child relationship poses a substantial threat of harm to the child. See Petrosky v. Keene, 898 S.W.2d 726, 728 (Tenn. 1995). As pertinent in this case, T.C.A. § 36-1-113 allows the termination of parental rights in two instances. Parental rights may be terminated if: (1) the child has been removed from the home of the parent by court order for six months and (2) the conditions which led to the removal or other similar conditions still persist, are unlikely to be remedied in the near future, and the continuation of the parent-child relationship greatly diminishes the child's chances of early integration into a stable and permanent home. Tenn.Code Ann. §

5

36-1-113(g)(3)(A).[8] Also, parental rights may be terminated if "there has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4."[9] Tenn.Code Ann. 36-1-113(g)(2).

Although there is evidence of noncompliance and the petition for termination alleged substantial noncompliance as a basis for termination, the trial court's order of termination seems to rest on T.C.A.§ 36-1-113(g)(3)(A). Since we affirm the decision on that basis, we do not reach the question of substantial noncompliance as an independent basis for terminating the Austill's parental rights.[10]

### Termination under T.C.A. § 36-1-113(g)(3)(A)

The issue before us is whether the evidence presented to the trial court satisfied the "clear and convincing" standard required for termination of parental rights. We entertain this issue in light of the criteria enumerated in T.C.A. § 36-1-113(g)(3)(A). In that regard,

---

[8] Section 36-1-113(g)(3)(A) states:

"(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home."

[9] T.C.A. §37-2-403(a)(2)(C) provides:

"Substantial noncompliance by the parent with the statement of responsibilities provides grounds for the termination of parental rights, notwithstanding other statutory provisions for termination of parental rights, and notwithstanding the failure of the parent to sign or to agree to such statement if the court finds the parent was informed of its contents, and that the requirements of the statement are reasonable and are related to remedying the conditions which necessitate foster

care placement."

[10] We point out, as the trial court seemed to recognize, that the Austill's failure to comply with the plan of care is evidence that some of the conditions which led to the removal of the children, namely the Austill's parenting skills, have not been remedied.

6

the relevant questions on appeal are whether there was clear and convincing evidence that: 1) the children had been removed from the home for more than six(6) months, 2) the conditions which led to the children's removal still persist, 3) there is little likelihood that the conditions will be remedied, and 4) the continuation of the parent/child relationship diminishes the chances of these children's placement in a home.[11]

The main thrust of appellants' argument is that the conditions which led to the removal of the children have been remedied. It must be conceded, as appellee does, that the Austills have made some improvements in their living conditions. They have moved to a new home that appears to be substantially better than the home from which the children were removed. However, the mere fact that the appellants have moved to a new home does not mandate a finding that the conditions have changed. See In the Matter of M.W.A., Jr., C.D.A., P.C.A., K.M.A., and A.K.A., 980 S.W.2d 620, 623 (Tenn. Ct. App. 1998) ("Although the parents have improved their living conditions with a clean, well-furnished home, they have not demonstrated that their parenting skills have improved or will likely improve in the near future even with additional support"). Additionally, there is evidence that the new three-bedroom home is not being fully utilized. Mrs. Austill and one of her children sleep in the living room while one of the bedrooms is devoted solely to storage. Therefore, the Austill's move to a new home does not constitute a change of conditions sufficient to preponderate against the trial court's decision.

In support of their claim that conditions have been improved, the appellants' point out that three children remain in the home.[12] This argument rests on the assumption that the Department of Children's Services would not allow these children to remain in the home if conditions were less than adequate. We find this line of reasoning unpersuasive because the conditions of the two sets of children are not necessarily the same. The fact that the six children were removed from the home does not mean that the three remaining

---

[11] There is no dispute that the children have been removed from the home for more than six months. In fact, the children have been in the custody of the State since 1994. Therefore, we need only consider the remaining factors.

[12] These are the children that were born after the removal of the children that are the subject of this appeal.

7

children should be removed. Similarly, the fact that three children remain in the home is not evidence that the other children should be returned. Each situation is independent of the other and should be judged as such.

There is little, if any, evidence to show that the Austills are any more equipped to deal with their children's problems now than they were when the children were removed. It would be impossible to accurately list the numerous allegations that were made regarding the Austills and their children. Likewise, the many physical and mental deficiencies of the children are too numerous and varied to list. While we are not blind to the fact that improvements have been made, the overwhelming majority of the evidence shows that the improvements are minor in comparison to the deficiencies that remain. Mr. and Mrs. Austill have their own problems for which they were unwilling to seek counseling. While they did attend the parenting classes, they never completed the anger management counseling or the individual counseling sessions. The evidence leaves little doubt that most of the conditions which led to the removal of the children remain. Our review of the record shows that there is clear and convincing evidence to sustain the termination of the Austill's parental rights.

The trial court found that there was little likelihood that the conditions which led to removal will be remedied. We find no error in this determination. These children were removed from the home in 1994. We find no basis for believing that these conditions can be remedied in the near future given the fact that the Austills had several years to make the necessary changes and failed to do so. Similarly, we agree with the trial court's finding that the continuation of the parent/child relationship greatly diminishes the children's chances of early integration into a stable and permanent home. In fact, some of the children's foster parents have already indicated a willingness to adopt.

Having determined that the statutory elements for termination of parental rights found in T.C.A. § 36-1-113(g)(3)(A) were satisfied, the trial court found that termination was in the best interests of the children. Based on our review of the record, we find no error

8

in that conclusion.

*Hearsay Objections*

The appellants argue that the trial court impermissibly based the termination of parental rights on inadmissible hearsay. This hearsay took the form of various letters and reports generated by the guardian ad litem. In response, the appellee argues that the majority of the information found in these reports was propounded to the court through other witnesses and was, therefore, a duplication of that evidence. Alternatively, the appellee argues that any error in admitting the reports was harmless.

We are unable to say whether all of the information contained in the guardian ad litem reports came in through other witnesses. We can, however, say that there was sufficient evidence, unrelated to the guardian ad litem reports, to sustain the trial court's decision. As such, any error in the admission of these reports was harmless. <u>See</u> Tennessee Rules of Appellate Procedure, Rule 36(b).

### III. Conclusion

For the reasons stated herein, we affirm the decision of the trial court. Costs of this appeal are taxed to the appellants, Charles and Linda Austill, for which execution may issue if necessary.

_____
_____HIGHERS, J.

CONCUR:

_____
CRAWFORD, P.J., W.S.

_____
LILLARD, J.

9