IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 25, 2004

## STATE OF TENNESSEE DEPARTMENT OF CHILDREN'S SERVICES v. T.N.S.S.

**Appeal from the Juvenile Court for Hamilton County
Nos. 177,144, 177,145, 177,146      Suzanne Bailey, Judge**

**No. E2003-02935-COA-R3-PT - FILED DECEMBER  30, 2004**

The trial court terminated the parental rights of T.N.S.S. ("Mother") with respect to her three children, D.D.M. (DOB: February 10, 1989), D.S.Jr. (DOB: August 7, 1990), and D.J.S. (DOB: July 27, 1991).  Mother appeals, arguing, *inter alia*, that the evidence preponderates against the trial court's dual findings, by clear and convincing evidence, that grounds for termination exist and that termination is in the best interest of the children.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

James D. Purple, Sr., Chattanooga, Tennessee, for the appellant, T.N.S.S.

Paul G. Summers, Attorney General and Reporter, and Elizabeth C. Driver, Assistant Attorney General, for the appellee, State of Tennessee Department of Children's Services.

## OPINION

### I.

In August 2001, D.D.M., D.S.Jr., and D.J.S. (collectively "the children") came into the custody of the Department of Children's Services ("DCS")[1], following a finding of truancy by the trial court with respect to all three children and an adjudication that the children were dependent and

---

[1]Private citizens, rather than DCS, petitioned the court for the removal of the children from Mother's home.

neglected.[2] One year later, DCS filed a petition to terminate Mother's parental rights.[3] The case was heard over three days in June, July, and October, 2003. On November 11, 2003, the trial court entered its order, finding, by clear and convincing evidence, that grounds for terminating Mother's parental rights existed and that termination was in the best interest of the children. Specifically, the court made the following findings:

> Based upon proof introduced at the hearings and the entire record, from all of which the Court finds by clear and convincing evidence:
>
> That the petition filed by [DCS] is well taken and should be sustained and relief granted thereunder for the causes as therein stated in that:
>
> The subject children have been in the custody of [DCS] for at least six (6) months, specifically since August 14, 2001. The Court had sustained for the third time, Dependent and Neglect, Truancy and Educational Neglect Petitions, and placed the children in [DCS's] temporary custody. [Mother] was being held responsible for the children's truancy and had failed to cooperate with numerous services through CSA, CASA and Family and Children's Services;
>
> [DCS] was not the petitioner at the time of removal but had made reasonable efforts to prevent removal off and on for several years;
>
> [DCS] made reasonable efforts to assist [Mother] to establish a suitable home for the children for a period of four (4) months following the removal, but [Mother] made no reasonable efforts to provide a suitable home and demonstrated a lack of concern for the children to such a degree that it appears unlikely that [she] will be able to provide a suitable home for the children at an early date. Shortly after the children came into custody, [DCS] met with [Mother] to explain the purpose of permanency plans and to develop

---

[2]Mother filed a motion with this court seeking a correction of the record on appeal, averring that the record contained documents that were not properly before the trial court. Specifically, Mother contended in her motion that the record contained materials from the dependency and neglect proceedings and that such materials, pursuant to Tenn. R. App. P. 8A(c), must be excluded from the record unless they have properly been admitted into evidence before the trial court. In an order dated August 20, 2004, we held that the record in the instant case was filed on June 4, 2004, while Rule 8A(c) did not go into effect until July 1, 2004. Accordingly, we held that "the record is to consist of what was filed on June 4, 2004." Because the new rule was not in effect at the time of the trial in this matter, there was no error in the trial court's reliance on and referral to records of the underlying dependency and neglect proceedings. In light of this holding, Mother's subsequent motion to strike the brief of DCS is hereby denied.

[3]The petition also sought to terminate the parental rights of J.M., father of D.D.M., and D.S., father of D.S.Jr. and D.J.S. Default judgments were entered against J.M. on November 18, 2002, and against D.S. on July 30, 2003, terminating their respective rights to the children. Neither father is a party to this appeal.

responsibilities aimed at correcting the conditions causing removal of her children. The following day, [Mother] asked the children's case manager for an appointment so she could start working toward the goals [sic] of reunification. The appointment was scheduled, [Mother] called to say she would be late, then never appeared. [Mother] was advised of a variety of meetings, including educational meetings, but failed to attend these meetings in which her participation was vital in helping her children. On one occasion, [Mother] called and said she would not be able to attend as she had a hair appointment;

[DCS] has been unable to provide services to [Mother], because she failed to cooperate and failed to keep in contact with [DCS] so that it could help her.

[Mother] abandoned the children, by willfully failing to visit or making only token visitation with said children for four (4) months immediately preceding the filing of this petition, despite knowing that said children were in state custody and despite being free and able to make such visits. [Mother's] visits were sporadic and could only be considered token.

[Mother] abandoned the subject children by willfully failing to support said children or to make reasonable payments toward the support of said children for four (4) consecutive months immediately preceding the filing of this petition.

[Mother] has failed to comply in a substantial manner with the statement of responsibilities set out in periodic foster care plans prepared for her, following the subject children being found to be dependent and neglected by the Juvenile Court of Hamilton County. [DCS] explained to [Mother] those reasonable responsibilities, which are directly related and aimed at remedying the conditions, which necessitate foster care placement. Specifically, said plans required that [Mother]:

> (1) Visit the children a minimum of 4.3 hours per month;
>
> (2) Participate and complete parenting classes;
>
> (3) Obtain clinical interview and follow all recommendations made;

-3-

(4) Obtain drug and alcohol assessment and follow all recommendations made;

(5) Cooperate with [DCS] toward the goal of reunification;

(6) Obtain and maintain stable employment.

[Mother] failed to comply with the above-listed responsibilities in the approximate 12 months prior to the filing of the Petition to terminate her parental rights.

The subject children have been removed by order of a court for a period of six (6) months. The conditions which led to the removal still persist or other conditions persist which in all probability would cause the children to be subjected to further abuse and neglect and which, therefore, prevent the children's return to the care of [Mother]. There is little likelihood that these conditions will be remedied at an early date so that the children can be returned to [Mother] in the near future.

Continuation of the legal parent and child relationship greatly diminishes the children's chances of early integration into a stable and permanent home. The likelihood that a successful adoptive placement can be found for any child in foster care diminishes as the child grows older and as the amount of time spent in foster care lengthens.

It is, therefore, for the best interest of the said children and the public that all of the parental rights of [Mother] to the said children be forever terminated and that the complete custody, control and guardianship of the said children should now be awarded to [DCS] with the right to place said children for adoption and to consent to any adoption in loco parentis.

(Paragraph numbering and lettering in original omitted). From this order, Mother appeals.

II.

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the lower court's conclusions of law. ***Jahn v. Jahn***, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996).

III.

The law is well-established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). This right, however, is not absolute and may be terminated if there is clear and convincing evidence justifying termination under the pertinent statute. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Clear and convincing evidence is evidence which "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App. 1995).

Tenn. Code Ann. § 36-1-113(g) lists the grounds upon which parental rights may be terminated, and "the existence of any one of the statutory bases will support a termination of parental rights." *In re C.W.W.,* 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000). The issues raised in the pleadings, and the trial court's findings, bring into play the following statutory provisions:

*Tenn. Code Ann. § 37-1-147 (2001)*

(a) The juvenile court shall be authorized to terminate the rights of a parent or guardian to a child upon the grounds and pursuant to the procedures set forth in title 36, chapter 1, part 1.

* * *

*Tenn. Code Ann. § 36-1-113 (Supp. 2004)*

(a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, . . . by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

\* \* \*

(g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

(1) Abandonment by the parent or guardian, as defined in [Tenn. Code Ann.] § 36-1-102, has occurred;

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(i) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

\* \* \*

*Tenn. Code Ann. § 36-1-102 (Supp. 2004)*

As used in this part, unless the context otherwise requires:

(1)(A) "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

(ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date;

\* \* \*

(C) For purposes of this subdivision (1), "token visitation" means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child;

(D) For purposes of this subdivision (1), "willfully failed to support" or "willfully failed to make reasonable payments toward such child's support" means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more that token payments toward the support of the child;

(E) For purposes of this subdivision (1), "willfully failed to visit" means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation;

-7-

*　*　*

*Tenn. Code Ann. § 37-2-403 (Supp. 2004)*

(a)(1) Within thirty (30) days of the date of foster care placement, an agency shall prepare a plan for each child in its foster care. . . .

*　*　*

(2)(A) The permanency plan for any child in foster care shall include a statement of responsibilities between the parents, the agency and the caseworker of such agency. . . .

*　*　*

(C) Substantial noncompliance by the parent with the statement of responsibilities provides grounds for the termination of parental rights, notwithstanding other statutory provisions for termination of parental rights, . . . .

IV.

Mother raises four issues for our consideration: (1) whether DCS exercised reasonable efforts to prevent the removal of the children from Mother's custody; (2) whether DCS made reasonable efforts to reunify Mother with the children; (3) whether grounds for terminating Mother's parental rights were shown by clear and convincing evidence; and (4) whether termination of Mother's parental rights was in the best interest of the children. We will address each of these issues in turn.

A.

Mother first contends that DCS failed to establish "by clear and convincing evidence that it made reasonable efforts to prevent the removal of [Mother's] children from her legal custody."

Our review of the record reveals that at no time did Mother raise this issue before the trial court. The law is well-established that issues not raised before the trial court cannot be raised for the first time on appeal. *State Dep't of Human Servs. v. Defriece*, 937 S.W.2d 954, 960 (Tenn. Ct. App. 1996). However, even if this issue were before us, it is clear that Mother must fail on it because a finding of reasonable efforts prior to the *initial removal* of the children is not a prerequisite to terminating a parent's rights. Rather, such a determination is to be made prior to a child being *adjudicated* dependent and neglected. *See* Tenn. Code Ann. § 37-1-166(a) (2001). The order in the instant case finding that the children were dependent and neglected was a final order and was appealable as of right. *See* Tenn. Code Ann. § 37-1-159(a) (2001); Tenn. R. Juv. P. 36. Mother did

-8-

not appeal from the dependency and neglect order, and hence, she is barred from raising the issue of whether reasonable efforts were made to prevent the removal.

B.

Mother next asserts that DCS did not make reasonable efforts to reunite Mother with her children. In support of her contention, Mother relies on Tenn. Code Ann. § 37-1-166 (2001).[4] This court has previously held that, with respect to the reasonable efforts of DCS in a termination case, the proper code provision is Tenn. Code Ann. § 36-1-113(i)(2). *See **In re A.W.***, 114 S.W.3d 541, 545 (Tenn. Ct. App. 2003). Tenn. Code Ann. § 36-1-113(i) provides, in pertinent part, as follows:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> * * *
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

The evidence in the record is clear that DCS made reasonable efforts to assist Mother with her parenting skills in order to facilitate the return of her children. Mother even admitted at trial that DCS worked with her to develop her permanency plans and provided her with a list of places she could contact regarding her requirement under the plans to undergo an alcohol and drug assessment. Mother, however, repeatedly demonstrated that she was unwilling to cooperate with DCS. She failed to appear for scheduled meetings with her DCS case manager. In addition, she failed to attend vital meetings regarding the education of her children. Mother failed to keep in regular contact with DCS and even moved out of state without informing DCS. As we have previously stated, "[t]he statute

---

[4]Tenn. Code Ann. § 37-1-166 provides, in pertinent part, as follows:

> (a) At any proceeding of a juvenile court, prior to ordering a child committed to or retained within the custody of [DCS], the court shall first determine whether reasonable efforts have been made to:
>
> (1) Prevent the need for removal of the child from such child's family; or
>
> (2) Make it possible for the child to return home.
>
> (b) Whenever a juvenile court is making the determination required by subsection (a), [DCS] has the burden of demonstrating that reasonable efforts have been made to prevent the need for removal of the child or to make it possible for the child to return home.

does not require a herculean effort on the part of DCS," but rather that DCS "make 'reasonable efforts.'" *State Dep't of Children's Servs. v. Malone*, No. 03A01-9706-JV-00224, 1998 WL 46461, at \*2 (Tenn. Ct. App. E.S., filed February 5, 1998). The evidence does not preponderate against the trial court's finding that DCS made reasonable efforts to reunite Mother with the children.

C.

Next, Mother contends that grounds for terminating her parental rights were not proven by clear and convincing evidence. We disagree.

The trial court found that Mother "failed to comply in a substantial manner with the statement of responsibilities set out in periodic foster care plans prepared for her." Mother's permanency plans[5] required her to do the following: (1) attend and participate in parenting classes and provide documentation of successful completion of same; (2) obtain a clinical interview and follow through with any recommended counseling; (3) participate in family counseling with the children as recommended by counselors; (4) inform the children's school of how she can be reached during the day in case of emergencies, attend and participate in school staffings and parent-teacher conferences, talk to the children's teachers at least once a month to discuss the children's progress even if they are still in state custody, and ensure the children attend school and have a way to and from school each day; (5) establish and maintain a legal source of income; (6) obtain an alcohol and drug assessment and follow through with any recommendations; (7) stay out of jail and refrain from engaging in any illegal activity; (8) demonstrate knowledge of the children's whereabouts when they are away from home and only leave the children with responsible caretakers; and (9) establish an appropriate supervision plan and a response plan for emergencies.

While our review of the record indicates that Mother obtained a clinical interview and a drug and alcohol assessment, maintained a legal source of income, and stayed out of jail, she failed to substantially comply with the other requirements under the plans, which are arguably the most important, as they relate to her ability to properly care for the children. While Mother did complete her parenting classes, she waited some nine months after the children had come into custody to begin the classes, and while she claimed to have completed the classes in early 2003, she did not have the proper documentation until October, 2003, which was over two years after the permanency plans had been developed. Most significantly, Mother did nothing to comply with the requirement relating to the children's education. There is nothing in the record to indicate that she informed the school of how she could be reached in the event of an emergency, nor is there is any indication that she ever ensured the children were attending school or established that they had a way to and from school

---

[5]In her brief to this court, Mother alleges that the permanency plans were not properly admitted into evidence at the hearing before the trial court, and that the requirements of the plans were read into evidence by Mother's case manager, in violation of Tenn. R. Evid. 612. However, it is clear from the record of the proceedings below that Mother did not object either on the basis of Rule 612 or on the failure to admit the plans into evidence. "Failing to make a timely, specific objection in the trial court prevents a litigant from challenging the introduction of inadmissible evidence for the first time on appeal." *Wright v. United Servs. Auto. Ass'n*, 789 S.W.2d 911, 914 (Tenn. Ct. App. 1990) (citations omitted). This issue is found adverse to Mother.

each day. It appears that she did not comply with the requirement of speaking to the children's teachers each month. While she apparently did attend one school-related meeting, it had to be rescheduled several times as Mother continually failed to appear. Because the children were initially removed from Mother's custody due to their repeated truancy, it is obvious that the permanency plan requirement related to education was of the utmost importance, and Mother utterly failed to comply with it.

As the trial court stated at the conclusion of the hearing in this case, "[w]hat little [Mother] did do was too late, well after the fact and still not substantial enough to convince this court that it's in the best interest of these children to return the children to her at any time in the foreseeable future." We cannot say that the evidence preponderates against the trial court's finding, by clear and convincing evidence, that Mother failed to substantially comply with the requirements of the permanency plans.

In addition, the trial court found that Mother had failed to remedy the conditions which led to the removal of the children, pursuant to Tenn. Code Ann. § 36-1-113(g)(3)(A). At the time of the hearing in the instant case, the children had been removed from Mother's custody for well over six months, as required by the aforementioned statute. The conditions which led to the removal of the children related to their continued truancy from school. Mother blamed her inability to get the children to school on her inability to cope with the death of her parents, whom she lost in November and December, 1998. However, the children were removed from her custody due to truancy in August, 2001, over two and a half years after the death of her parents. Nine months after her children were removed from her custody, Mother moved to Alabama, because, in her words, "every time I turned around it was somebody saying something and it was coming back to me in the courtrooms about this and about that" and she "felt like it would be better for me with less [bad] influences."

It is clear that Mother's emotional distress over the death of her parents was such that she was unable to meet the educational needs of her children for nearly three years. Her abrupt move to Alabama without informing anyone at DCS is further evidence of her inability to remedy this distress in her life. The trial court certainly believed that these conditions could not be remedied in Mother's life in the foreseeable future so as to allow for the safe return of her children, and we hold that the evidence does not preponderate against this finding.

The trial court found additional bases for terminating Mother's parental rights in that the court found abandonment in the form of lack of support, as well as failure to visit. DCS did not address these additional bases in its brief, nor do we. Having found a sufficient legal justification for termination on the grounds discussed herein, we pretermit the dual issues presented by the allegation of abandonment.

D.

Finally, Mother argues that termination of her parental rights was not in the best interest of the children. The factors a court must consider when deciding whether termination is in a child's best interest are set forth in Tenn. Code Ann. § 36-1-113(i):

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>
> * * *
>
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
>
> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [Tenn. Code Ann.] § 36-5-101.

There is no question that Mother has failed to make a lasting adjustment of her circumstances such that it would be in the best interest of the children to be in Mother's home. *See* Tenn. Code Ann. § 36-1-113(i)(1). Mother utterly failed to complete the bulk of the permanency plan requirements related to the children's education and there is no indication that Mother has been able to sufficiently cope with the emotional distress she experienced following the death of her parents. As we have previously stated, Mother failed to make a lasting adjustment to her circumstances following the reasonable efforts of DCS. *See* Tenn. Code Ann. § 36-1-113(i)(2). Mother was

uncooperative with DCS, failed to attend scheduled meetings, failed to keep in contact with DCS, and moved to Alabama without informing anyone at DCS.

With respect to visitation, the trial court found that Mother had engaged in nothing more than token visitation. *See* Tenn. Code Ann. § 36-1-113(i)(3). There is no evidence that a meaningful relationship was ever established between Mother and the children. *See* Tenn. Code Ann. § 36-1-113(i)(4). Because of Mother's failure to demonstrate a willingness to improve her parenting abilities and her interest in the children's education, the return of the children to Mother would likely have a profoundly negative psychological and emotional impact on the children. *See* Tenn. Code Ann. § 36-1-113(i)(5). Further, Mother's original DCS case manager testified at trial that two of the children were living with families who wished to adopt them and that the children were doing wonderfully in those homes. With respect to the middle child, D.S.Jr., the case manager testified that he suffered from sporadic behavior problems and needed to live in a very structured environment, something that Mother would be unable to provide.

It appears that Mother's emotional distress has not improved to such a degree as to make her capable of properly supervising the children. *See* Tenn. Code Ann. § 36-1-113(i)(8). Finally, the trial court found that Mother failed to pay child support. *See* Tenn. Code Ann. § 36-1-113(i)(9).

We conclude that the evidence contained in the record does not preponderate against the trial court's finding by clear and convincing evidence that the termination of Mother's parental rights is in the best interest of the children.

V.

The judgment of the juvenile court is affirmed. This case is remanded to the juvenile court for enforcement of that court's judgment and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, T.N.S.S.

_____
CHARLES D. SUSANO, JR., JUDGE