IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 3, 2017

**IN RE DAMIEN G. M.**

**Appeal from the Juvenile Court for Bradley County
No. J-12-219 Kurt Andrew Benson, Magistrate**

_____

**No. E2016-02063-COA-R3-PT**
_____

This is a termination of parental rights case. Father/Appellant appeals the termination of his parental rights to the minor child on the grounds of: (1) abandonment by willful failure to provide a suitable home and willful failure to support; (2) substantial noncompliance with the requirements of the permanency plan; and (3) persistence of the conditions that led to the child's removal from Father's home. Father also appeals the trial court's finding that termination of his parental rights is in the child's best interest. Because Appellee has failed to meet its burden to prove, by clear and convincing evidence, any of the grounds for termination of Father's parental, we reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Reversed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which W. NEAL MCBRAYER, J., joined. CHARLES D. SUSANO, JR., J., filed a dissenting opinion.

Berry Foster, Cleveland, Tennessee, for the appellant, Billy S.

Herbert H. Slatery, III, Attorney General and Reporter, and Ellison M. Berryhill, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**I. Background**

The child at issue in this case, Damien G. M., was born to Sandra M. ("Mother")[1] and Billy S. ("Appellant," or "Father") in December of 2011.[2] Although Appellant and Mother were not married at the time of Damien's birth, Appellant was adjudicated the legal and biological father by order of August 2, 2012.[3]

The Tennessee Department of Children's Services ("DCS," or "Appellee") first became involved with this family in October of 2014, when DCS received a referral alleging educational neglect of Damien's older sibling, who is not the subject of this appeal, and drug exposure of both children. On October 31, 2014, Child Protective Services investigators attempted to meet with Mother to address the allegations, but she was unwilling to meet. On December 15, 2014, DCS received a second referral, alleging drug exposure. DCS was able to contact Mother following the second referral. She met with DCS and submitted to a drug screen, testing positive for methadone, for which she allegedly had a valid prescription. DCS received a third referral on February 10, 2015. At that time, Mother filed a non-custodial permanency plan to address the truancy case involving the older child. On April 1, 2015, Mother appeared before the Juvenile Court for Bradley County (the "trial court") on the truancy case. She allegedly notified the court that she was homeless and without income. The court ordered her to submit to a drug test, and she tested positive for methamphetamine. On April 1, 2015, the court allegedly issued a bench order of removal, placing the children in DCS custody.[4]

On April 17, 2015, Damien, who was three years old at the time, was given a hair follicle drug screen, which was positive for methamphetamine and amphetamine. On April 20, 2015, DCS conducted a Child and Family Team Meeting, which Father attended. The parties developed a permanency plan, which was explained to Father, along with the statement of parent's responsibilities. In relevant part, Father's requirements, under the permanency plan, were to: (1) sign all releases for DCS to obtain information; (2) submit to random drug screens; (3) refrain from being around those who use illegal substances; (4) attend Damien's medical appointment; (5) provide DCS with a valid lease; (6) provide DCS with a valid driver's license; (7) maintain stable housing for six months; (8) maintain contact with DCS; (9) provide proof of legal income; and (10) submit to alcohol and drug assessment and follow any recommendations.

On May 4, 2015, DCS filed a "Petition in Response to the Bench Order," alleging that Damien had been subjected to severe child abuse by Mother and that he was dependent and neglected due to Father's drug use. Based on the allegations contained in

---

[1] Damien's mother surrendered her parental rights on September 24, 2015. She is not a party to this appeal.

[2] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

[3] The August 2, 2012 order is not part of the appellate record; however, the parties do not dispute Appellant's paternity.

[4] The April 1, 2015 order is not in the appellate record.

- 2 -

the petition, DCS asked the trial court to find Damien dependent and neglected. After Damien was removed from Mother's custody, DCS approached Father for possible placement of the child. However, when he was drug tested, Father tested positive for methamphetamine, and, as a result, Damien was placed with a family acquaintance. In May of 2015, DCS received a copy of Father's first drug and alcohol assessment, which recommended that he attend five chemical dependency support group meetings; the record indicates that Father attended the recommended meetings. Family Services Worker Zachery Peters testified that Father continued to fail random drug tests after he completed the recommended meetings. Mr. Peters further testified that Father completed a second alcohol and drug assessment, which recommended no further treatment. Although Mr. Peters testified that he last requested a drug screen sometime around March of 2016, the appellate record contains no specific proof of: (1) the exact dates that Father was asked to submit to drug screens; (2) the dates of the drug screens he failed; (3) the dates of drug screens he refused to take; or (4) whether the requested drugs screens, failed drug screens, and refusals occurred before or after Father's second alcohol and drug assessment.

On June 17, 2015, Mr. Peters met with Father to discuss his lack of progress and positive drug screens. Father stated that his positive screens were due to Mother breaking into his residence and contaminating his tea with methamphetamine. He also opined that his positive screens could be the result of his consumption of energy drinks. On or about June 25, 2015, the trial court allegedly adjudicated Damien to be dependent and neglected due to Father's illegal drug use.[5] Also on June 25, 2015, the trial court ratified the April 20, 2015 permanency plan, finding the goals and responsibilities to be appropriate and reasonably related to the reasons the child came into DCS custody.

On August 5, 2015, Father was served with a child support summons and petition. On September 14, 2015, he failed to attend the hearing on the petition in the child support court. By default, Father was ordered to pay $308.00 per month in child support (pursuant to the guidelines for full-time minimum wage income) and $42.00 per month toward child support arrears. In its petition to terminate Father's parental rights, DCS averred that he had "only paid . . . $800.00 total in support for this child . . . since August 2, 2012 . . . . During that period [of non-payment], more than . . . $12,355.00 has accrued pursuant to the court's orders." According to the petition to terminate parental rights, Father was incarcerated, for non-payment of child support, from September 9, 2015 until October 28, 2015.

On February 3, 2016, DCS filed a petition to terminate Father's parental rights on grounds of: (1) persistence of the conditions that led to the child's removal; (2) abandonment by willful failure to support; (3) substantial non-compliance with the

---

[5] Our appellate record does not contain an adjudicatory order of dependency and neglect, *see* discussion *infra*.

requirements of the permanency plan; and (4) abandonment by failure to provide a suitable home. The petition was heard on August 25, 2016. By order of September 14, 2016, the trial court terminated Father's parental rights on all of the grounds asserted by DCS and on its finding that termination of Father's parental rights is in the child's best interest. Father appeals.

## II. Issues

Father raises the following issues for review, as stated in his brief:

1.  The Appellant would respectfully submit that no clear and convincing evidence was presented to support a finding of persistent conditions.

2.  The Appellant would respectfully submit that no clear and convincing evidence was presented to support a finding of abandonment—failure to provide a suitable home.

3.  The Appellant would respectfully submit that no clear and convincing evidence was presented to support a finding of abandonment—failure to support.

4.  The Appellant would respectfully submit that no clear and convincing evidence was presented to support a finding of substantial non-compliance with the permanency plan.

5.  The Appellant would respectfully submit that no clear and convincing evidence was presented to support a finding that termination of Appellant's parental rights would be in the best interest of this child as required by Tenn. Code Ann. § 36-1-113(c).

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B*., Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person or entity seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn.

Code Ann. § 36-1-113(c); ***In re D.L.B***., 118 S.W.3d 360, 367 (Tenn. 2003); ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. ***Santosky***, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); ***In re Valentine***, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable ... and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." ***In re M.J.B.***, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. July 12, 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002).

### IV. Grounds for Termination of Parental Rights

As noted earlier, the trial court relied on the following statutory grounds in terminating Appellant's parental rights: (1) persistence of the conditions that led to the child's removal from Father's home, Tenn. Code Ann. § 36-1-113(g)(3); (2) abandonment by willful failure to support, Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(i); (3) substantial noncompliance with the requirements of the permanency plan, Tenn. Code Ann. § 36-1-113(g)(2); and (3) abandonment by failure to provide a suitable home; Tenn. Code Ann. §§ 36-1-113(g)(1), 36-1-102(1)(A)(ii). In its appellate brief, DCS concedes that it has not met its burden of proof to show abandonment by willful failure to support, abandonment by failure to provide a suitable home, and persistence of the conditions that led to the child's removal. Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground **relied upon by the trial court** to terminate parental rights in order to prevent "unnecessary remands of cases." ***In re Angela E.***, 303 S.W.3d 240, 251 n.14 (Tenn. 2010) (emphasis added). Although DCS relies only on the ground of substantial non-compliance with the requirements of the permanency plan, because the trial court relied on four grounds, we will review all of the grounds cited by the trial court.

## A. Persistence of Conditions

Tennessee Code Annotated Section 36-1-113(g)(3) defines persistence of conditions as follows:

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Concerning this ground, in its order terminating Father's parental rights, the trial court made the following findings:

The child has been removed from [Father's] home by court order for more than six months; and the conditions that led to the removal still persist. The child . . . was adjudicated dependent and neglected in part based on the [F]ather's drug use and a finding that the child could not remain in the [F]ather's home. The court finds that there is little chance that those conditions will be remedied soon so that the child can be returned safely to the home. The court finds that continuation of the parent/child relationship greatly diminishes the child's chances of being placed into a safe, stable and permanent home.

The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re Arteria H.*, 326 S.W.3d 167, 178 (Tenn.Ct.App.2010), overruled on other grounds by *In re Kaliyah S.*, 455 S.W.3d 533 (Tenn.2015).

In *In re Audrey S.*, 182 S.W.3d 838, 872 (Tenn.Ct.App.2005), *perm. app. denied* (Tenn. Nov. 7, 2005), this Court held that "based on the statutory text and its historical

development, [the ground of persistence of conditions found in Tennessee Code Annotated Section 36-1-113(g)(3)] applies as a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S.*, 182 S.W.3d at 872. In the first instance, although the parties and the trial court reference an April 1, 2015 order removing Damien to state custody and a June 25, 2015 order, wherein the trial court allegedly adjudicated Damien to be dependent and neglected due to Father's illegal drug use, neither of these orders is contained in the appellate record. We emphasize that our jurisdiction is appellate only, and our review is limited to the record transmitted to this Court. In the absence of any order adjudicating Damien to be dependent and neglected, this Court cannot engage in its reviewing function. In other words, without the order, we cannot ascertain what the conditions were that led to the child's removal such that we may review the trial court's determination that those conditions persist. *In re Audrey S*., 182 S.W.3d 838, 875 (Tenn. Ct. App. 2005) (holding that the statutory ground of persistence of the conditions that led to the children's removal was not applicable because removal of the children to state custody was based on the father's petition for a change in custody, and was not based on an adjudication of dependency and neglect); *In re Destaney D*., No. E2014-01651-COA-R3-PT, 2015 WL 3876761, *6 (Tenn. Ct. App. June 23, 2015) ("[W]e hold that the statutory ground of persistence of conditions is not applicable to Father ... inasmuch as the record contains no order removing the Children from Father's home.").

However, even if this record contained an order adjudicating the child to be dependent and neglected, as a threshold requirement for applicability of the ground of persistence of conditions in termination of parental rights cases, the child must not only have been adjudicated dependent and neglected, but he or she must also have been removed from the defendant parent's home. Tenn. Code Ann. § 36-1-113(g)(3) ("The child has been removed from the home of the parent ...."). From the record and DCS's concession, it is clear that Damien was not, in fact, living in Father's home at the time he was removed to state custody. Rather, all evidence indicates that he was removed from Mother's custody. In *In re Maria B.S*., this Court was presented with a situation similar to the case at bar. In *Maria B.S.*, father's parental rights were terminated on a finding of persistence of conditions; however, the children had not, in fact, been removed from father's home because he was incarcerated at the time. In reversing the ground of persistence of conditions, we explained:

> We next address whether the Trial Court erred in finding and holding that clear and convincing evidence existed to terminate Father's parental rights to the Children pursuant to Tenn. Code Ann. § 36-1-113(g)(3). Father argues that this ground could not be applied to his case as the Children were not removed from his home by order of a court. "The child has been removed from the home of the parent or guardian by order of a court...." Tenn. Code Ann. § 36–1-113(g)(3).

- 7 -

We agree with Father as to this issue. Father was incarcerated at the time of the Children's birth. No one removed the Children from Father-he never had the Children in the first place. There is case precedent to support Father's position that, without removal from that parent's home, the ground of persistent conditions is inapplicable. *See In re T.L.*, No. E2004-02615-COA-R3-PT, 2005 WL 2860202, at *7 (Tenn. Ct. App. Oct.31, 2005), Rule 11 appl. perm. appeal denied Feb. 17, 2006; *In re D.L.B.*, No. W2001-02245-COA-R3CV, 2002 WL 1838147, at *9 (Tenn. Ct. App. Aug.6, 2002), rev'd on other grounds, 118 S.W.3d 360 (Tenn. 2003); *In re B.P.C.*, M2006-02084-COA-R3PT, 2007 WL 1159199, at *7 (Tenn. Ct. App. April 18, 2007), no appl. perm. appeal filed.

*In re Maria B.S.*, No. E2012-01295-COA-R3-PT, 2013 WL 1304616, *11 (Tenn. Ct. App. March 4, 2013); *see also In re Destaney D.*, 2015 WL 3876761, *5 ("The legal deficiency concerning the trial court's determination regarding this ground for termination lies in the fact that the Children were not removed from Father's home. The testimony at trial established that the reason for the Children's removal was drug abuse by the mother when the Children were in the mother's custody."); *accord In re K.M.K.*, No. E2014-00471-COA-R3-PT, 2015 WL 866730 (Tenn. Ct. App. Feb. 27, 2015).

Based on the foregoing authority, we hold that the statutory ground of persistence of conditions is not applicable to Father under the facts presented here insomuch as the record contains no court order removing the child from Father's home (on grounds of dependency and neglect or otherwise), and there is no evidence to suggest that Damien was residing in Father's home at the time of his removal.

### C. Abandonment by Willful Failure to Support

The trial court found, by clear and convincing evidence, that Father's parental rights should be terminated on the ground of abandonment by willful failure to pay support pursuant to Tennessee Code Annotated Section 36-1-113(g)(1) as defined at Tennessee Code Annotated Sections 36-1-102(1)(A)(i). In pertinent part, Tennessee Code Annotated Section 36-1-113(g) provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]

Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated Section 36-1-102 defines "abandonment," in relevant part as follows:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

(i)     For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians... have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

In its order terminating Father's parental rights, the trial court found,

Pursuant to T.C.A. §§ 36-1-113(g) and 36-1-102(1)(A)(i) the Court finds by clear and convincing evidence[,] that [Father] has abandoned the child by willfully failing to make reasonable payments toward the support of the children [sic] in the four months preceding the filing of this petition. [Father] has been ordered by this Court to pay current and arrears child support . . . . To date, [Father] has not paid anything towards the child support obligation . . . The undisputed evidence was that [Father] has consistently reported having employment and regular income, but has refused to provide documentation.

Although the trial court relied on the definition of abandonment found at Tennessee Code Annotated Section 36-1-102 (1)(A)(i), as noted above, in its petition to terminate parental rights, DCS averred that Father was incarcerated from September 9, 2015 until October 28, 2015. Other than DCS's averment, there is no substantive evidence in the record from which to determine the exact dates of Father's incarceration. The dates of incarceration are important only insofar as these dates dictate the statutory definition of abandonment that is applicable in this case. Tennessee Code Annotated Section 36-1-102(1)(A)(iv) applies to incarcerated parents and provides, in relevant part, that:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

***

(iv) A parent or guardian is incarcerated at the time of the institution of an

action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Trial Exhibit 4 is a record of Father's child support payments; it shows that, as of August 16, 2016, Father had not paid any child support from April 1, 2014 to September 2, 2016. Accordingly, whether we apply the four-month statutory period prior to Father's alleged incarceration under Tennessee Code Annotated Section 36-1-102(1)(A)(iv), or whether we apply the four-month statutory period immediately preceding the filing of the petition to terminate Father's parental rights under Tennessee Code Annotated Section 36-1-102(1)(A)(i), there is no dispute that Father has not paid child support for Damien since April 1, 2014. The question, however, is whether Father's failure to pay support was willful under either of the foregoing statutory definitions.

In *In re Audrey S*., this Court discussed willfulness in the context of termination of parental rights cases:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months . . . . In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing ....
>
> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S*., 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005) (internal citations and

footnotes omitted).

For purposes of Tennessee Code Annotated Section 36-1-102(1)(A)(i), "token support" means that the support, under the circumstances of an individual case, is not significant considering the parent's means. Tenn. Code Ann. § 36-1-102(1)(B). This Court has held that failure to pay support is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C*., 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)). In other words, a parent's failure to pay child support is not, *ipso facto*, sufficient to support the ground of abandonment by willful failure to support. Rather, the parent's failure to pay must be willful. The burden to show that the parent's failure to pay is willful, i.e., that the parent has income and ability to pay is on the moving party (here, DCS) and not on Father.

Turning to the record, the only proof provided by DCS concerning Father's ability to pay was the testimony of Mr. Peters, who testified, in relevant part, as follows:

Q. Okay. Has [Father] provided you proof of legal income?

A. No, he has not.

Q. Okay. Does [Father] report working?

A. He does.

Q. Where does he work?

A. He works for a wrecker company with his brother.

Father did not testify in this case, and the foregoing testimony is the only evidence concerning Father's employment. There is no evidence indicating Father's income or his expenses. In this regard, the instant case is factually similar to *In re The Adoption of Angela E., et al.,* wherein the Tennessee Supreme Court held that the evidence was insufficient to establish that father had abandoned the child based on willful failure to support. Specifically, the Court stated:

Mother and Stepfather contend that Father had the ability to pay his child support obligation in full and that his payment of $3500 of the $10,336 owed between March 2005 and July 2005 was insufficient given his means. The evidence concerning Father's income and expenses is

- 11 -

limited at best, however, and we conclude that Mother and Stepfather failed to prove that Father's payment history between March 5, 2005, and July 5, 2005, reflected mere "token support."

\*\*\*

> For the four-month period immediately preceding the filing of the petition to terminate parental rights, Father paid $3500 in child support to Mother. No evidence was introduced concerning Father's monthly expenses.

***In re The Adoption of Angela E., et al***., 402 S.W.3d 636, 641 (Tenn. 2013). The same is true in this case. In order to meet its burden to show that Father willfully failed to pay support, or made only token support, DCS must show that Father "ha[d] the capacity to provide the support, ma[de] no attempt to provide support, and ha[d] no justifiable excuse for not providing the support." ***In re J.J.C.***, 148 S.W.3d at 926 (citation omitted). In the absence of any proof as to Father's income and expenses during either the four-month time period before his alleged incarceration, or during the four-month time period immediately preceding the filing of the petition to terminate his parental rights, we conclude that Appellee has failed to show, by clear and convincing proof, that Father has abandoned Damien by **willful** failure to provide support. Accordingly, we reverse this ground for termination of his parental rights.

### C. Failure to Substantially Comply with the Permanency Plan

The trial court ratified one permanency plan in this case.  As set out above, Father's requirements under the plan included: (1) sign all releases for DCS to obtain information; (2) submit to random drug screens; (3) refrain from being around those that use illegal substances; (4) attend Damien's medical appointment; (5) provide DCS with a valid lease; (6) provide DCS with a valid driver's license; (7) maintain stable housing for six months; (8) maintain contact with DCS; (9) provide proof of legal income; (10) submit to alcohol and drug assessment and follow any recommendations.  In its order terminating Father's parental rights, the trial court found that Father

> has not substantially complied with the permanency plan.  [Father] has not submitted to random drug screens since April of this year.  Although he has established a home, his continuously testing positive for methamphetamine, and his refusal to submit to drug screens render his home inappropriate. . . . Father has not provided proof of legal income.

Tennessee Code Annotated Section 36-1-113(g)(2) authorizes termination of

- 12 -

parental rights when:

> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4.

A trial court must find that the requirements of a permanency plan are "reasonable and related to remedying the conditions which necessitate foster care placement." Tenn. Code Ann. § 37-2-403(a)(2)(C). Here, the trial court made a finding that the requirements under the permanency plan were reasonable and related to remedying the conditions that necessitated the child's removal.

At the hearing, Mr. Peters testified that Father submitted to the required alcohol and drug assessment. Concerning the recommendations given to Father, Mr. Peters stated:

> [Father] obtained two [alcohol and drug assessments]. His first A & D assessment recommended five support group meetings. [Father] attended those meetings, but he continued to fail drug tests after having completed them.
>
> ***
>
> The second round of A & D [assessment], the assessment he took recommended no treatment at all.

As set out above, the trial court primarily relied on Father's failure to submit to random drug screens as the basis for its finding that he had failed to substantially comply with the requirements of the permanency plan. It appears that the trial court gave little consideration to the fact that Father satisfied the majority of the requirements of the plan. From our review of the record, Father complied with all of the permanency plan requirements except for the drug screens and proof of income (but see above discussion concerning DCS's failure to meet its burden to show that Father had the ability to pay child support). While we concede that Father's failure to submit to drug screens undermines his attempts to regain custody of Damien, we have concern that the drug screening requirement may not garner the weight it did at the outset of these proceedings in light of the second drug and alcohol assessment, which recommended no further treatment. In *In re Valentine*, the Tennessee Supreme Court explained:

> Substantial noncompliance is a question of law which we review de novo with no presumption of correctness. Substantial noncompliance is not defined in the termination statute. The statute is clear, however, that noncompliance is not enough to justify termination of parental rights; the

- 13 -

noncompliance must be substantial. Black's Law Dictionary defines "substantial" as "[o]f real worth and importance." Black's Law Dictionary 1428 (6th ed.1990). In the context of the requirements of a permanency plan, the real worth and importance of noncompliance should be measured by both the degree of noncompliance and the weight assigned to that requirement. Terms which are not reasonable and related are irrelevant, and substantial noncompliance with such terms is irrelevant.

*In re Valentine*, 79 S.W.3d at 548-49.  In *In re Valentine*, the Court ultimately held that the ground of substantial non-compliance was not proven:

Ms. Wallace complied with the requirements of attending parenting classes and maintaining stable housing. She partially complied with the requirement of maintaining supervised visitation. Her poor record of visitation prior to the filing of the termination petition stands in marked contrast to her commendable efforts in the year prior to the hearing. Improvement toward compliance should be considered in a parent's favor. *See **State Dept. of Human Services v. Defriece***, 937 S.W.2d 954, 961 (Tenn.Ct.App.1996) (stating that decision reversing trial court's termination of parental rights was influenced by evidence of improvement in mother's ability to provide a stable environment for child). Ms. Wallace did not comply with the requirements of attending individual counseling and undergoing a neuropsychiatric evaluation. We assign little weight to these requirements, given the fact that Ms. Wallace was obtaining other counseling and was not referred for a neuropsychiatric evaluation. Of the requirements entitled to significant weight—parenting classes, stable housing, and supervised visitation—Ms. Wallace complied with two and partially complied with the other. We conclude that this proof does not rise to the level of clear and convincing evidence of substantial noncompliance with the requirements of the permanency plans under Tenn. Code Ann. § 36-1-113(g)(2).

*In re Valentine*, 79 S.W.3d at 549.  Likewise, in this case, the recommendation of no further treatment in Father's most recent alcohol and drug assessment may have significant impact on the requirements of the permanency plan.  As noted above, the trial court ratified only one plan in this case, and there is no indication that DCS revisited the requirements at any time after the initial plan was drafted.  In light of Father's current alcohol and drug assessment, which recommended no further treatment, we cannot conclude that his failure to submit to random drug testing is substantial enough to warrant the grave consequences of termination of his parental rights at this point.  We also note that DCS failed to provide any specific details regarding the number of random drug screens Father refused and whether those drug screens were scheduled before or after Father's apparent successful completion of the second round of alcohol and drug

- 14 -

assessment.

## D. Abandonment by Willful Failure to Provide a Suitable Home

Tennessee Code Annotated Section 36-1-113(g)(1) authorizes termination of parental rights on the ground of abandonment as defined by Tennessee Code Annotated Section 36-1-102(1)(A)(ii):

> (ii) The child has been removed from the home of the parent or parents or a guardian or guardians as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date.

In its order terminating Father's parental rights, the trial court made the following findings concerning the ground of abandonment by failure to provide a suitable home:

> In its adjudicatory order, the Court found that the child should be removed from [Father's] home and placed into foster care because [Father] was unable to provide a safe and stable home for the child due to drug use. . . . [Father] has an appropriate brick and mortar home, but his drug use renders the home inappropriate for the child . . . . [Father's] failure to make even minimal efforts to improve his home and personal condition demonstrates a lack of concern for the child to such a degree that it appears unlikely that she [sic] will be able to provide a suitable home for the child at an early date.

As noted above, the "adjudicatory order" is omitted from the appellate record, and this Court cannot review the specific facts that led to the child's removal. Also, as discussed above, there is no proof that the child was removed from Father's home; rather, it appears that he was removed from Mother's custody. Family Services Worker, Mr. Peters, testified that Father owns a house and that he provided proof of ownership. In

- 15 -

light of his current alcohol and drug assessment, it is unclear whether Father is currently using illicit drugs so as to make his home an unsuitable environment for the child. The trial court states that Father failed "to make even minimal efforts to improve his home and personal condition," but the record shows otherwise. Father satisfied many of the requirements DCS set out for him, i.e., he maintains a home; he provided proof of ownership; he submitted to alcohol and drug assessments; he has a valid driver's license; and he has maintained some semblance of contact with Damien. The termination of parental rights analysis is not a one-size-fits-all proposition. From our review of the record, there is a concern that the entire case was given short shrift, e.g., the lack of a dependency and neglect order in the record; the fact that information for Damien's sibling (who is not the subject of this appeal) is included in the record; the lack of witnesses (only Mr. Peters and the child's foster parent testified); the lack of any review of the original permanency plan; and the relative sparsity of findings in the trial court's order terminating Father's parental rights. The burden of proof is on DCS, and, from the totality of the circumstance and the record as a whole, we conclude that DCS has not met its burden to show, by clear and convincing proof, any of the grounds for termination of Father's parental rights. Having determined that none of the grounds for termination of parental rights is met in this case, we pretermit the best interest discussion.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellee, The Tennessee Department of Children's Services.

_____
KENNY ARMSTRONG, JUDGE